NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0326n.06

**No. 14-1381**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| EUGENE MEEKS; SYLVIA MEEKS; GABRIELLE NEELY; MICHAEL DAVID MEEKS; THOMAS WILLIAM PIATEK; and DAVID STONE, JR., | ) ) ) ) | **FILED** <br> May 05, 2015 <br> DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| SANDRA LARSEN; LESLIE LARSEN; D. CHRISTOPHER ALLEN; STEPHEN HAUG; and UNITED STATES OF AMERICA, | ) ) ) | |
| Defendants-Appellees. | ) | |

BEFORE:     BOGGS and McKEAGUE, Circuit Judges; and PEARSON, District Judge.[*]

BOGGS, Circuit Judge.   Three members of the Hutaree, an allegedly criminal militia group in Michigan, along with certain family members, filed a civil complaint against federal law-enforcement officers under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  The complaint alleges that, in connection with the execution of search warrants during the government's investigation of the Hutaree and the resulting prosecutions, the officers violated the plaintiffs' constitutional rights under the First, Second, Fourth, and Fifth Amendments.  The district court dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and the plaintiffs filed a timely appeal.  Because the complaint

---

[*] The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

fails to state a claim under *Bivens* of the violation of any constitutional rights, we affirm the district court's decision.

I

On March 27, 2013, Plaintiffs-Appellants Thomas Piatek, Michael Meeks, Eugene Meeks, Sylvia Meeks, and Gabrielle Neely filed a civil complaint against various federal law-enforcement officials, alleging violations of their federal constitutional rights under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). On September 30, 2013, the plaintiffs filed an Amended Complaint, which added Plaintiff-Appellant David Stone, Jr., to the lawsuit. The Amended Complaint sought money damages from FBI agents Leslie Larsen, Stephen Haug, and D. Christopher Allen and FBI task-force officer Sandra Larsen stemming from the FBI's investigation of the Michigan-based militia group known as the Hutaree and the resulting execution of four search warrants at homes belonging to the Plaintiffs-Appellants.

Plaintiffs-Appellants Thomas Piatek, Michael Meeks, and David Stone, Jr., were defendants in the federal criminal case against the Hutaree. They were acquitted by directed verdict at the close of the government's case. The remaining Plaintiffs-Appellants—Eugene Meeks, Sylvia Meeks, and Gabrielle Neely—are family members of Michael Meeks.

A

For a period of about 18 months, the FBI investigated members of the Michigan Hutaree, a militia group that allegedly "acquired a significant arsenal of weapons, including components of pipe bombs, and trained as a paramilitary organization." *United States v. Stone*, 608 F.3d 939, 944 (6th Cir. 2010). On March 23, 2010, a grand jury indicted several members of the Hutaree, including Thomas Piatek, Michael Meeks, and David Stone, Jr., on charges of seditious

conspiracy, attempt to use weapons of mass destruction, and using and carrying firearms during and in relation to crimes of violence. *Id.* at 943–44.

Also on March 23, 2010, a federal magistrate judge issued a search warrant for the residence of Eugene Meeks, Sylvia Meeks, and Gabrielle Neely. On March 27, 2010, the magistrate judge issued additional search warrants for the homes of Thomas Piatek and David Stone, Jr. On that date, federal and state agents executed the search warrants at those three locations. On March 30, 2010, the judge issued the final search warrant for the home of Michael Meeks, and the warrant was executed that same day. At each of the four locations, law-enforcement officials recovered items listed in the search warrants, including firearms and ammunition.

According to the Amended Complaint, each of these warrants was supported by an affidavit prepared by Defendant-Appellee Sandra Larsen. The affidavit incorporated information provided by Defendant-Appellee Steven Haug, who allegedly contributed to the FBI's investigation into the Hutaree. Haug also reported this information to Defendant-Appellee Leslie Larsen, who was in charge of the FBI's investigation and ordered the execution of the search warrants. Defendant-Appellee D. Christopher Allen supervised the team of state and federal agents who executed the search warrants and seized property belonging to Plaintiffs-Appellants.

B

In the criminal proceedings against the members of the Hutaree, Piatek and Stone, Jr., moved to suppress evidence obtained during the government's searches. Piatek's Motion to Quash Search Warrant, which was joined by Stone, Jr., asserted that the government lacked probable cause to search Piatek's residence because there was no nexus between the location and any criminal activity. Stone, Jr.'s *Franks* Motion to Suppress Evidence, which was joined by

Piatek and Michael Meeks, asserted that the warrant affidavit prepared by Sandra Larsen failed to establish probable cause and contained materially false representations and omissions under the standard elucidated in *Franks v. Delaware*, 438 U.S. 154 (1978).

In his report and recommendation, the magistrate judge in the criminal case recommended that the district court deny Piatek's and Stone, Jr.'s motions. Specifically, the magistrate judge found that "the warrant affidavit established probable cause to believe that a search of the various residences and vehicles would uncover evidence of a crime or contraband." The magistrate judge also concluded that the movants "failed to meet their burden of establishing their entitlement to a *Franks* hearing." This conclusion was based on the findings that the "bulk" of the alleged misstatements identified in the warrant affidavit "do not involve false statements at all" and, "assuming that the other statements or omissions were deliberately or recklessly false, excising those statement and including those omissions does not render the affidavit devoid of probable cause." After conducting a de novo review, the district court in that case agreed that "the affidavits supporting the search warrants established probable cause for the searches." Furthermore, the court held that the movants failed to "establish that the warrants contained deliberately or recklessly false material statements or omissions" and thus "there [was] no need for a *Franks* hearing." As a result, the district court denied the motions.

Despite their lack of success in seeking to suppress the government's evidence, Piatek, Michael Meeks, and Stone, Jr., were ultimately acquitted by directed verdict pursuant to Rule 29 of the Federal Rules of Criminal Procedure on March 27, 2012.

C

In the Amended Complaint in this civil case, Plaintiffs-Appellants brought a myriad of *Bivens* claims attacking the warrant affidavit, which was prepared by Sandra Larsen based in part

on information provided by Stephen Haug; the search warrants obtained by Leslie Larsen; and the resulting searches and seizures conducted under the supervision of Leslie Larsen and D. Christopher Allen. The Amended Complaint included: (1) Fourth Amendment claims for unreasonable search, unreasonable seizure of personal property, and malicious prosecution (Counts 1, 3, 7, 9, 12, 16, and 17); (2) Second Amendment claims for interference with the right to keep and bear arms (Counts 2 and 8); (3) a First Amendment claim for infringement on the free exercise of religion (Count 18); and (4) Fifth Amendment claims for violation of substantive due process (Counts 4 and 10).[1]

On February 28, 2014, the district court granted the motion to dismiss filed by the individual Defendants-Appellees after, inter alia, concluding that collateral estoppel barred the re-ligation of challenges to the showing of probable cause in the search warrants; applying qualified immunity and the three-year limitations period for *Bivens* claims; and refusing to extend *Bivens* liability to the First and Second Amendment claims. *Meeks v. Larsen*, 999 F. Supp. 2d 968 (E.D. Mich. 2014). This timely appeal followed.

II

*Motions to Dismiss.* "We review de novo the district court's order granting dismissal under Rule 12(b)(6)." *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 630 (6th Cir. 2013). In doing so, we accept all material allegations as true and view them in the light most favorable to the plaintiff, but we do not accept "conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). To survive a motion to dismiss, a complaint must present

---

[1] The remainder of the counts in the Amended Complaint asserted claims against the United States for trespass to chattels (Counts 5 and 11), false arrest (Count 13), and false imprisonment (Count 14), and derivative claims for exemplary damages (Counts 6, 15, and 19). These claims are not raised in this appeal.

"enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Bivens *Remedy.* In *Bivens*, the Supreme Court recognized a private cause of action for damages under the United States Constitution—in that case, "for particularly egregious violations of the Fourth Amendment." *Left Fork Min. Co. v. Hooker*, 775 F.3d 768, 774 (6th Cir. 2014). The Supreme Court later extended the *Bivens* remedy to other violations of the Constitution. *See Carlson v. Green*, 446 U.S. 14, 16 (1980) (Eighth Amendment claims); *Davis v. Passman*, 442 U.S. 228, 230 (1979) (Fifth Amendment due-process claims). However, the Supreme Court has made clear that there is no "automatic entitlement" to a *Bivens* remedy, "and in most instances," the Court has "found a *Bivens* remedy unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). In deciding whether to apply a *Bivens* remedy, a court will analyze (1) whether there is any alternative process for safeguarding the constitutional rights at issue; and (2) even if no alternative exists, whether there are special factors that counsel hesitation in creating a judicial remedy. *Ibid.*

*Qualified Immunity.* Qualified immunity is an affirmative defense that shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does "'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). After a defendant raises the defense in the first instance, the burden shifts to the plaintiff to demonstrate that the government official violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In analyzing an assertion of

qualified immunity, a court will determine (1) whether, viewing the evidence in the light most favorable to the injured party, a constitutional right has been violated; and (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

III

A. Fourth Amendment Claims

*1. Malicious Prosecution.* In Counts 12 and 16 of the Amended Complaint, Michael Meeks, Piatek, and Stone, Jr., brought malicious-prosecution claims against Leslie Larsen for allegedly instigating a grand-jury investigation based on false and misleading information and unlawfully seized evidence.

We have recognized a "'constitutionally cognizable claim of malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006)). To succeed on a Fourth Amendment malicious-prosecution claim, a plaintiff must demonstrate that: (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the prosecution; (3) the plaintiff suffered a deprivation of liberty, beyond the initial seizure, as a result of the criminal proceeding; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Id.* at 308–09. Our focus is on the second element.

Michael Meeks, Piatek, and Stone, Jr., were arrested following a grand-jury indictment. Their malicious-prosecution claims thus face a high burden because "it has long been settled that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused

to answer.'" *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (quoting *Ex parte United States*, 287 U.S. 241, 250 (1932)). There is an exception to this general rule when the defendants knowingly presented false testimony to the grand jury to obtain the indictment, *Martin v. Maurer*, 581 F. App'x 509, 511 (6th Cir. 2014), or testified with a reckless disregard for the truth, *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014).

The Amended Complaint asserts that the indictment was based on "unlawfully seized evidence and false and misleading information." However, the Amended Complaint makes no effort to identify what that false and misleading information was. *Cf.* Appellants' Br. 25 ("Granted, Plaintiffs did not insert into the complaint any specific grand jury testimony but asked the District Court for leave to do so which was denied . . . ."). Nor does it make any specific allegations that Leslie Larsen "presented false testimony to the grand jury to obtain the indictment," *Martin*, 581 F. App'x at 511, stating merely that "Leslie Larsen caused to be instigated a grand jury investigation which utilized unlawfully seized evidence and false and misleading information." It is not sufficient, even at the motion-to-dismiss stage, to make only such vague and conclusory assertions without factual support. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Martin*, 581 F. App'x at 511 (affirming the dismissal of a malicious-prosecution claim in the absence of a specific allegation of false testimony before the grand jury). Plaintiffs-Appellants have not pled "specific facts necessary to establish the[ir] cause of action." *New Albany Tractor, Inc.*, 650 F.3d at 1050.

The indictment in the criminal case against the Hutaree, which is not undermined by specific, plausible allegations of falsity, established the existence of probable cause. Therefore, the malicious-prosecution claims fail.[2]

*2. Unreasonable Search and Seizure.* In Counts 1, 3, 7, 9, and 17, Plaintiffs-Appellants alleged that the Defendants violated their Fourth Amendment rights because there was no probable cause to search their homes or seize "numerous items of non-contraband personal property . . . without a valid warrant."

In the *Bivens* context, "[i]t is well-established that a government investigator is liable for violating the Fourth Amendment when he deliberately or recklessly submits false and material information in a warrant affidavit." *Johnson v. Hayden*, 67 F. App'x 319, 323 (6th Cir. 2003). The question whether a warrant affidavit is so defective as to support a claim for damages under the Fourth Amendment is governed by the standard set out in *Franks v. Delaware*. *See Johnson*, 67 F. App'x at 324 (applying *Franks* standard in *Bivens* case); *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (applying *Franks* to evaluate a § 1983 claim). Under this approach, "a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Johnson*, 67 F. App'x at 324.

Under the *Franks* standard, an individual challenging a warrant affidavit must "point out specifically the portion of the warrant affidavit that is claimed to be false," and this showing "should be accompanied by a statement of supporting reasons." *Franks*, 438 U.S. at 171. When applying this standard in the criminal context, we have stressed that:

---

[2] In light of this holding, we need not address whether Leslie Larsen is entitled to qualified immunity on this claim.

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth. He must accompany his allegations with an offer of proof. Moreover, he also should provide supporting affidavits or explain their absence.

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (internal citations omitted).

In addition, a law-enforcement official "ordinarily receives qualified immunity if he or she relies on a judicially secured warrant." *Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005). However, if "the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable." *Yancey v. Carroll Cnty., Ky.*, 876 F.2d 1238, 1243 (6th Cir. 1989). Moreover, "an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Ibid*.

The Amended Complaint repeatedly asserts that Haug "omitted materially important information" and "deliberately provided false information" to Leslie Larsen and Sandra Larsen, and that Sandra Larsen deliberately or recklessly "asserted unfounded and speculative opinions and conclusions" in the warrant affidavit. What the Amended Complaint does not do at any point, however, is identify any statements in the warrant affidavit that are alleged to be false or materially incomplete. Thus, even at the motion-to-dismiss stage, Plaintiffs-Appellants fall short of their obligation to present "well-pleaded, nonconclusory factual allegation[s]" that "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679, 680; *see also Unus v. Kane*, 565 F.3d 103, 124 (4th Cir. 2009) (affirming dismissal of a Fourth Amendment claim where "the plaintiffs fail to sufficiently allege that [the officials]— deliberately or with reckless disregard for the truth—made any material misrepresentations of fact in violation of the Constitution").

In their brief on appeal, Plaintiffs-Appellants cite one paragraph of the warrant affidavit as an "example of the false substance in the affidavit." Appellants' Br. 27–28. In this paragraph, the affidavit explains that a confidential informant who was relied upon in the government's investigation of the Hutaree was "a reliable source of information," based on his "accurate descriptions of people and vehicles associated with the" group that were "later verified by surveillance" and "consensual recordings." *Id.* at 27. Plaintiffs-Appellants assert that these statements are false because the informant was, in fact, "a completely out of control individual suffering through significant emotional and behavioral problems during the time frame of his cooperation." *Ibid.* Even accepting this allegation as true, it does not establish that the affidavit was false in any way. The informant still could have been a source of reliable information despite these troubles, and Plaintiffs-Appellants offer nothing to undermine the affidavit's assertion that the informant's information was verified by other sources. Furthermore, Plaintiffs-Appellants make no effort beyond making conclusory statements to establish that, even if this paragraph were false, it was deliberately or recklessly so, or that it was "material to the finding of probable cause." *Johnson*, 67 F. App'x at 324.

Plaintiffs-Appellants also argue in their brief that "Defendants had no basis to believe that Michael Meeks resided at 13531 Bemis Road," the home of his relatives Eugene Meeks, Sylvia Meeks, and Gabrielle Neely, from which law-enforcement officials seized multiple firearms and other items. Appellants' Br. 40. They assert that the informant and certain investigators "were well aware" that Michael Meeks did not live there and, thus, "the only logical explanation" for the search of this premises "is a malicious intent to impose upon the family of Michael Meeks . . . a form of punishment of Michael Meeks." *Ibid.*

The warrant affidavit, however, specifically noted that the Bemis Road address was listed as Michael Meeks's residence with the Michigan Secretary of State. There is no allegation that this information was false. Moreover, there is no dispute that family members of Michael Meeks actually resided at this address. In light of the address information from the Michigan Secretary of State, as well as the other unchallenged elements of the affidavit, it would be entirely reasonable for investigators to believe that there was "a fair probability that contraband or evidence," *Illinois v. Gates*, 462 U.S. 213, 238 (1983), related to Michael Meeks's association with the Hutaree would be found at the Bemis Road address. Thus, Plaintiffs-Appellants are not able to demonstrate that there was any deliberately or recklessly false information material to the finding of probable cause in the affidavit, *see Johnson*, 67 F. App'x at 324, or that "official belief in the existence of probable cause is unreasonable," *Yancey*, 876 F.2d at 1243.

This case is distinguishable from *Johnson*, in which the plaintiffs' allegations were sufficient to survive a motion to dismiss under the pre-*Twombly* and -*Iqbal* "no set of facts" test. *Johnson*, 67 F. App'x at 324. In pleading a *Bivens* claim, the *Johnson* plaintiffs' complaint pointed to specific facts suggesting that an FBI agent "knowingly included false information, material to the finding of probable cause, in the warrant affidavit." *Johnson*, 67 F. App'x at 324. The plaintiffs in *Johnson*—similar to Plaintiffs-Appellants here—claimed that investigators knew that an informant's identification statement was false and that the target of the investigation did not live at the address listed in the affidavit. However, the *Johnson* plaintiffs also specifically alleged that the agent failed to disclose to the magistrate judge who issued the warrant that the government's investigations failed to reveal any wrongdoing on the part of the actual owners of the property to be searched. *Ibid.* There is no such specific allegation undermining the warrant issued in this case.

Plaintiffs-Appellants have not plausibly alleged that there are material falsehoods or omissions in the warrant affidavit or that the warrant is so lacking in probable cause as to render reliance upon it unreasonable. Therefore, the claims of unlawful search and seizure fail.

## B. Second Amendment Claims

In Counts 2 and 8 of the Amended Complaint, Eugene Meeks, Sylvia Meeks, Michael Meeks, and Piatek alleged that the government's seizure of certain firearms interfered with their Second Amendment right to keep and bear arms. They maintain that *Bivens* liability should be extended to this context following the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), which recognized an individual right under the Second Amendment.

In pursuing a *Bivens* claim, "a plaintiff must initially demonstrate (1) a challenged action attributable to a person acting under color of federal law, and (2) conduct that deprives the party of a constitutionally protected interest." *Left Fork Min. Co.*, 775 F.3d at 774 (citing *Schweiker v. Chilicky*, 487 U.S. 412, 418–21 (1988)). Here, Plaintiffs-Appellants assert that, acting under their legal authority and pursuant to an allegedly invalid warrant, federal agents searched their homes and seized their firearms, ostensibly in violation of their Second Amendment rights.

As noted above, we undertake a two-step inquiry to determine whether *Bivens* liability should be extended to the particular context at issue. *Ibid.* A *Bivens* remedy will be inferred only after analyzing (1) whether there is any alternative process for safeguarding the constitutional rights at issue; and (2) even if no alternative exists, whether there are special factors that counsel hesitation in creating a judicial remedy. *Wilkie*, 551 U.S. at 550. Plaintiffs-Appellants have, unsurprisingly, failed to point to any cases in which this or any other federal court has applied *Bivens* to a Second Amendment claim. *See, e.g.*, *Yorzinski v. Imbert*, 39 F.

Supp. 3d 218, 223 (D. Conn. 2014) ("*Bivens* liability has not been extended to violations of the Second Amendment."). While this fact alone is not dispositive, it does give us pause, especially considering the Supreme Court's reluctance to extend *Bivens*. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) ("Since *Carlson* [in 1980] we have consistently refused to extend Bivens liability to any new context . . . .").

First, as the government points out, the Plaintiffs-Appellants advancing a Second Amendment claim here had "alternative, existing process[es] for protecting" their rights. *Wilkie*, 551 U.S. at 550. They could have filed a motion under Federal Rule of Criminal Procedure 41(g) for return of property. *See* Fed. R. Crim. P. 41(g) ("A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."). In addition, Plaintiff-Appellants could have—and, in fact, have—sought to vindicate their constitutional rights by filing a *Bivens* claim under the *Fourth Amendment* for improper seizure, without requiring the court to extend *Bivens* into an uncharted area of jurisprudence.

Moreover, there are special factors counseling hesitation in recognizing a *Bivens* remedy in this context. Plaintiffs-Appellants are correct that the Supreme Court has clearly established that "the Second Amendment conferred an individual right to keep and bear arms." *Heller*, 554 U.S. at 595. However, the Supreme Court has not set out the full extent of the right protected by the Second Amendment. Neither *Heller* nor the Court's subsequent decision in *McDonald*, 561 U.S. 742, which held that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment against the states, addressed liability for constitutional tort claims or suggested that a law-enforcement officer might be subject to monetary damages for seizing firearms pursuant to a warrant. Nor did these decisions clearly establish that an individual's Second Amendment rights are violated by the deprivation of specific firearms where

the individual's right to acquire other firearms is not abridged. *See, e.g.*, *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 571 (7th Cir.), *cert. denied*, 135 S. Ct. 478 (2014) ("Whether and to what extent the Second Amendment protects an individual's right to possess a particular gun . . . is an issue that is just beginning to receive judicial attention."); *Walters v. Wolf*, 660 F.3d 307, 318 (8th Cir. 2011) (finding no Second Amendment violation where the defendant lawfully seized one firearm and did not prohibit the plaintiff from acquiring other firearms, but refusing to foreclose the possibility that the Second Amendment applies to specific deprivations).

Even if we accept Plaintiffs-Appellants' invitation to extend *Bivens* to this context, the Amended Complaint is insufficient to state a claim. Especially in light of our holding that the search warrant was not clearly lacking in probable cause, the law-enforcement officials here would be entitled to qualified immunity because their conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818; *see also Doutel v. City of Norwalk*, No. 3:11-CV-01164 VLB, 2013 WL 3353977, at *25 (D. Conn. July 3, 2013) ("In the absence of controlling authority recognizing a Second Amendment violation in similar circumstances for the seizure by law enforcement officials of a particular firearm, and in light of the scarcity of applicable Second Amendment case precedent . . . , the Defendants are entitled to qualified immunity.").

### C. First Amendment Claim

In Count 18 of the Amended Complaint, Stone, Jr., alleged that his First Amendment right to the free exercise of religion was violated by the seizure of copies of the Holy Bible. As in the Second Amendment context, there is a dearth of precedent applying *Bivens* to free-exercise claims. *See, e.g.*, *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 n.6 (8th Cir. 2008) ("We have never found a *Bivens* action to extend to a Free Exercise claim, and it is doubtful that

we would do so."). In *Iqbal*, the Supreme Court "assume[d], without deciding," that the plaintiff's claim under the Free Exercise Clause was "actionable under *Bivens*"—but only after observing that the government defendants did not "press" this issue. 556 U.S. at 675. Indeed, in making this assumption, the Supreme Court expressly noted it has "not found an implied damages remedy under the Free Exercise Clause" and has "declined to extend *Bivens* to a claim sounding in the First Amendment." *Ibid.* (citing *Bush v. Lucas*, 462 U.S. 367 (1983)).

As with the Second Amendment claims discussed above, Stone had alternative methods for seeking return of his property, and it was not apparent that the seizure of particular religious materials pursuant to a search warrant, supported by probable cause, violated clearly-established rights. Moreover, Stone has not pled any facts indicating that the seizure of specific religious materials in this case "placed a substantial burden on the practice of his religion." *Wilson v. N.L.R.B.*, 920 F.2d 1282, 1290 (6th Cir. 1990). Thus, even assuming that a free-exercise claim is actionable under *Bivens*, the Amended Complaint fails to plead a constitutional violation sufficient to overcome qualified immunity.

### D. Fifth Amendment Claims

In Counts 4 and 10 of the Amended Complaint, Eugene Meeks, Sylvia Meeks, Michael Meeks, and Piatek claimed that false and misleading statements and material omissions in the warrant affidavit reflected "malicious" and "outrageous" conduct and "demonstrate[d] a reckless disregard of the[ir] substantive due process rights." As noted by the government, *see* Appellee's Br. 35, Plaintiffs-Appellants "concede[d]" in their response to the motion to dismiss below that their substantive-due-process claims "as currently worded cannot proceed." The district court denied Plaintiffs-Appellants' request to further amend those counts, *see Meeks*, 999 F. Supp. 2d at 982, and for good reason. To the extent that those claims involve a challenge to the warrant

affidavit and the resulting searches, seizures, and prosecutions, they are governed by the specific guarantees of the Fourth Amendment, which "go hand in hand with criminal prosecution," rather than the "scarce and open-ended" "guideposts" of substantive due process. *Albright v. Oliver*, 510 U.S. 266, 274 (1994).

Plaintiffs-Appellants present an alternative theory on appeal that the law-enforcement officials searched a residence that they allegedly knew did not belong to Michael Meeks out of "a malicious intent to impose [punishment] upon the family of Michael Meeks" as retaliation against Michael. Appellants' Br. 40. Even if this claim, which does not appear in the Amended Complaint, were plausible on its face, Plaintiffs-Appellants offer no explanation as to why this claim would not more properly be analyzed under the Fourth Amendment standards concerning probable cause and the veracity of search warrants, which have been fully addressed above.

IV

Plaintiffs-Appellants have failed to plausibly allege that their constitutional rights were violated during the government's investigation of the Hutaree or that they are entitled to a remedy under *Bivens*. Therefore, we AFFIRM the district court's decision dismissing their complaint.