RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0168p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

BRENDA BICKERSTAFF,

        *Plaintiff-Appellant,*

    *v.*

VINCENT LUCARELLI; DENNIS HILL; MICHAEL LEGG;
CHERYL MCDUFFIE; CITY OF CLEVELAND,

        *Defendants-Appellees*.

No. 15-4297

———————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:14-cv-00831—Christopher A. Boyko, District Judge.

Argued: June 8, 2016

Decided and Filed: July 21, 2016

Before: BOGGS, CLAY, and GILMAN, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Justin J. Hawal, THE DICELLO LAW FIRM, Mentor, Ohio, for Appellant. Kathryn M. Miley, WILKERSON & ASSOCIATES CO., LPA, Cleveland, Ohio, for Appellee Lucarelli. Jillian L. Dinehart, CLEVELAND LAW DEPARTMENT, Cleveland, Ohio, for Appellee City of Cleveland. **ON BRIEF:** Robert F. DiCello, THE DICELLO LAW FIRM, Mentor, Ohio, for Appellant. Kathryn M. Miley, Ernest L. Wilkerson, Jr., WILKERSON & ASSOCIATES CO., LPA, Cleveland, Ohio, for Appellee Lucarelli. Jillian L. Dinehart, CLEVELAND LAW DEPARTMENT, Cleveland, Ohio, for Appellees Hill, Legg, and McDuffie. Susan M. Bungard, CLEVELAND LAW DEPARTMENT, Cleveland, Ohio, for Appellee City of Cleveland.

1

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.  Brenda Bickerstaff filed this civil rights action against the City of Cleveland and several of its police officers, contending that she was wrongfully charged with intimidating a crime victim or witness and with telecommunications harassment.  The district court dismissed the bulk of her claims for failure to state a cause of action and subsequently granted summary judgment in favor of the remaining defendant.  Bickerstaff now appeals.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.　Factual background

Bickerstaff is a private investigator for a number of criminal-defense law firms in northeast Ohio.  In March 2012, Bickerstaff was conducting an investigation on behalf of a defendant accused of breaking into the house of Jasmine Harris.  Bickerstaff alleges that, as part of her investigation, she called Harris and that Harris agreed to be interviewed.  Shortly after speaking with Harris, Bickerstaff received a phone call from Detective Vincent Lucarelli.  He allegedly told her to discontinue her contacts with Harris, whom Lucarelli referred to as his "client."  Bickerstaff contends that Lucarelli was involved in a "personal and/or sexual relationship" with Harris, as well as with other female crime victims, based upon text messages and photos that Bickerstaff alleges were sent from Lucarelli's cell phone.

Although Bickerstaff alleges that Harris consented to be interviewed, her appellate counsel conceded at oral argument that Harris had in fact filed a formal complaint against Bickerstaff with the police.  The complaint, which accompanied a police report prepared by Lucarelli, indicated that Harris had originally agreed to an interview but later began to feel harassed by Bickerstaff's repeated calls and her unannounced visit to Harris's home.  Lucarelli submitted the incident report and complaint to his supervisor and a prosecutor, and the prosecutor ultimately decided to present the case to the grand jury.

In April 2012, a grand jury indicted Bickerstaff for intimidating a crime victim or witness and for telecommunications harassment.  As a result, Bickerstaff was required to obtain a lawyer, appear for arraignment, post bond, and undergo booking and processing.  The criminal proceedings against Bickerstaff were dismissed in her favor the following month.

Captain Dennis Hill was Lucarelli's supervisor at the time of the investigation, and Detective Michael Legg was Lucarelli's "coworker and fellow detective in the field." Bickerstaff's complaint asserted that Hill and Legg were not only aware of Lucarelli's "improper relationships with alleged women-victims," but that they also received sexually explicit pictures of and text messages concerning those victims from Lucarelli.  Notably, although Bickerstaff's complaint broadly asserts that Hill and Legg were aware of Lucarelli's relationships in general, she does not allege that either officer knew of Lucarelli's supposed relationship with Harris in particular.  According to Bickerstaff, Hill allegedly helped to conceal Lucarelli's relationships by "intentionally remaining silent and doing nothing to discipline" Lucarelli and "by making no reasonable inquiry into Lucarelli's misconduct."

Legg, for his part, allegedly stayed silent about Lucarelli's relationships, failed to report Lucarelli's unauthorized absences, and "intentionally author[ed] misleading, incorrect, [and] false police reports" in order to cover for his coworker.  According to Bickerstaff, both Hill and Legg also helped to conceal Lucarelli's relationships by "lying to Internal Affairs after [. . .] Lucarelli's misconduct finally became public."  But again, beyond these general claims, Bickerstaff's complaint does not specify whether Hill or Legg took such action in response to or in connection with Lucarelli's alleged relationship with Harris.

Cheryl McDuffie was the police officer who presented Bickerstaff's case to the grand jury.  Relevant to this appeal, Bickerstaff alleged that McDuffie "presented Lucarelli's paperwork to the grand jury" and "intentionally omitted exculpatory material facts that . . . would have persuaded the grand jury to no-bill an indictment."  That omission, according to Bickerstaff, was evident in a text-message conversation between Lucarelli and McDuffie a few days before the grand-jury proceedings.  Bickerstaff's complaint describes the conversation as follows:

a.   On April 4, 2012, . . . Defendant Lucarelli texted Defendant McDuffie that Plaintiff [Bickerstaff] was a private investigator, called Jasmine Harris, tried to get a statement, Jasmine said no, and Plaintiff showed up at Jasmine's house;

b.   On April 4, 2012, . . . Defendant McDuffie replied, "Ok!  Thanks.";

c.   On April 4, 2012, . . . Defendant Lucarelli stated, "I'll leave u a copy on ur desk. She was working for the defendant."[;]

d.   On April 4, 2012, . . . Defendant Lucarelli stated[,] "Okay.  Thank u. If they no bill it don't worry about it."; and

e.   Defendant Lucarelli indicated on a note in the file that he did not want this matter to be presented to the grand jury.

Based on the above exchange, Bickerstaff alleged that the grand jury "was not presented truthful information by and/or was blocked by Defendants from knowing all of the material facts involving the allegations against Plaintiff."  Those material facts, according to Bickerstaff, were "Defendant Lucarelli's history of carrying on sexual and/or personal relationships with alleged victims, like Jasmine Harris, as well as the generally baseless nature of the evidence and allegations brought against Plaintiff."

**B.      Procedural background**

Following the dismissal of the criminal proceedings against her, Bickerstaff filed suit in the Cuyahoga County Court of Common Pleas against Lucarelli, Hill, Legg, McDuffie, the City of Cleveland, and 10 "John Doe" police officers.  That suit was dismissed without prejudice in June 2013.  In March 2014, Bickerstaff refiled her complaint, and the City of Cleveland removed the case to the United States District Court for the Northern District of Ohio.  Bickerstaff then filed an Amended Complaint in which she asserted claims under the Ohio Revised Code, Ohio common law, the U.S. Constitution, and 42 U.S.C. § 1983, alleging malicious prosecution, abuse of process, retaliation, supervisory liability, municipal liability, civil conspiracy, and reckless, wanton, or willful conduct.

In July 2014, McDuffie filed a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the claims against her.  Hill, Legg, and the City of Cleveland filed their own motions to dismiss two days later.  And in December 2014, Lucarelli filed a motion for partial dismissal of Bickerstaff's claims against him for retaliation, civil conspiracy, and

reckless, wanton, or willful conduct. He did not move to dismiss Bickerstaff's claims against him for malicious prosecution or abuse of process.

In light of these pending motions, all of the parties asked the district court to hold the timeline for discovery in abeyance until it rendered its decision on the motions to dismiss. The court, in response, granted several extensions of the deadline to conduct discovery. The last extension was through April 10, 2015, with the court noting that "no further extensions" would be granted.

In March 2015, two weeks before the close of discovery, the district court granted the motions to dismiss filed by Hill, Legg, McDuffie, and the City of Cleveland. The court, in so doing, noted that "Bickerstaff's allegations, even taken as true, cannot demonstrate a plausible right of recovery" on her malicious-prosecution claim or her reckless, wanton, or willful conduct claim because Bickerstaff had "failed to plead sufficient factual allegations that show a lack of probable cause" arising from her indictment.

The following month, the district court dismissed Bickerstaff's claims against Lucarelli for retaliation and reckless, wanton, or willful conduct. It addressed those two claims in much the same way as it had the malicious-prosecution claims against the other individual defendants, emphasizing that Bickerstaff had "fail[ed] to state a claim that could plausibly defeat the presumption of probable cause based on the return of an indictment." But the court declined to dismiss Bickerstaff's civil-conspiracy claim against Lucarelli and instead determined that she had sufficiently alleged that Lucarelli's purported scheme to cover up his improper relationships was an attempt "to pursue personal interests wholly separate and apart from the City." In light of this holding, Bickerstaff's three surviving claims against Lucarelli were for malicious prosecution, abuse of process, and civil conspiracy.

Discovery in the case ended in April 2015. Lucarelli filed a motion for summary judgment five months later. Bickerstaff did not ask to reopen or extend discovery, nor did she file a response to Lucarelli's summary-judgment motion.

In October 2015, the district court granted summary judgment in favor of Lucarelli on all of the remaining claims. Regarding the malicious-prosecution claim, the court again pointed to

the presumption of probable cause resulting from the grand-jury indictment and concluded that Bickerstaff had presented "no evidence that any irregularities occurred with the grand jury." The court then addressed Bickerstaff's abuse-of-process claim. Because "Lucarelli followed the legal process as directed by his supervisor," and "[t]he prosecutor elected to present the case to the grand jury," the court concluded that Bickerstaff had not presented any evidence showing that Lucarelli abused the legal process to serve an ulterior purpose.

The district court's final step was to grant summary judgment to Lucarelli on the civil-conspiracy claim. Noting that Ohio law requires an "underlying unlawful act . . . before a civil conspiracy claim can succeed," *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998), the court reasoned that, because "the claims of malicious prosecution and abuse of process are without merit," Bickerstaff had "fail[ed] to provide evidence of an unlawful action" to support the conspiracy claim.

## II. ANALYSIS

### A. Standard of review

We review de novo the district court's dismissal of a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015). To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

We are required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Nevertheless, we need not accept as true any "conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). The plaintiff's complaint instead "must contain either direct or inferential allegations

with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007) (citation and internal quotation marks omitted).

**B.      Because Bickerstaff's brief fails to challenge the district court's grant of summary judgment in favor of Lucarelli, she has forfeited that issue on appeal**

Bickerstaff's brief spends many pages challenging the district court's orders dismissing her claims pursuant to Rule 12(b)(6). She conspicuously fails, however, to mount any challenge to the court's subsequent grant of summary judgment in favor of Lucarelli on the remaining claims of malicious prosecution, abuse of process, and civil conspiracy.

Bickerstaff's omission is particularly significant because the summary-judgment motion and motions to dismiss were all rooted in the same underlying factual allegations and consisted of several overlapping legal claims. Unlike the discovery-related issue discussed in Part II.D. below, where Bickerstaff failed to identify the discovery ruling in her notice of appeal but nevertheless argued the issue in her appellate brief, she did just the opposite here: She identified the summary-judgment order in her notice of appeal but then failed to address any of the issues raised by that order. Her brief instead sets forth only two issues for appellate argument: (1) the district court's orders dismissing Bickerstaff's allegations for failure to state a claim, and (2) the adequacy of the time frame for conducting discovery.

An appellant's brief must contain "a statement of the issues presented for review" and "a concise statement of the case setting out the facts relevant to the issues . . . and identifying the rulings presented for review." Fed. R. App. P. 28(a). This court has consistently held that "[a] party may not raise an issue on appeal by mentioning it in the most skeletal way, leaving the court to put flesh on its bones." *United States v. Hendrickson*, 822 F.3d 812, 829 (6th Cir. 2016) (brackets, citation, ellipses, and internal quotation marks omitted). "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (brackets, citation, and internal quotation marks omitted); *cf. United States v. Ford*, 184 F.3d 566, 578 n.3 (6th Cir. 1999) ("Even appellees waive arguments by failing to brief them.").

Because Bickerstaff made no effort to argue on appeal the issues raised by the summary-judgment order—and submitted no reply brief to justify or explain such an omission—her challenge to the grant of summary judgment in favor of Lucarelli is deemed forfeited. We will accordingly address only the claims that were dismissed by the district court at the pleading stage in accordance with Rule 12(b)(6).

## C.    Dismissals under Rule 12(b)(6)

Taking all of Bickerstaff's allegations as true, the essence of her claims is that (1) Lucarelli engaged in misconduct by carrying on personal and/or sexual relationships with female victims, including Harris; (2) Lucarelli sought to cover up this misconduct by falsely accusing Bickerstaff of harassing and intimidating Harris, whom Bickerstaff was seeking to interview as part of an investigation on behalf of a criminal-defense firm; (3) other officers in the Cleveland Police Department were aware of Lucarelli's relationships with female victims and failed to take action against Lucarelli; (4) the indictment against Bickerstaff was wrongfully obtained because the grand jury was not informed of Lucarelli's relationship with Harris or his text-message conversation with McDuffie; and (5) the City of Cleveland had an unconstitutional policy of tolerating such improper police conduct.

Despite these broad allegations, Bickerstaff's complaint fails to allege specific facts that would support recovery under any viable legal theory. *See Weisbarth*, 499 F.3d at 541. Her allegations are instead vague, conclusory, and speculative. Moreover, Bickerstaff provides no legal authority that would support a finding of plausibility under similar circumstances. We will address each of her claims in turn.

### 1.    *Malicious-prosecution claims*

As relevant to the nonforfeited claims, Bickerstaff first argues that Hill, Legg, and McDuffie are liable for malicious prosecution under both federal and state law. The elements of the tort of malicious criminal prosecution under Ohio law are "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 736 (Ohio 1990); *see also Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir. 2008). "Because there is no requirement

that the defendant to a malicious-prosecution charge must have evidence that will ensure a conviction, not every failed criminal prosecution will sustain a subsequent malicious-prosecution suit." *Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005) (brackets, citation, and internal quotation marks omitted).

The plaintiff must therefore show the absence of probable cause. But "[a]n indictment . . . is prima facie evidence of probable cause[,] and a plaintiff must bring forward substantial evidence to rebut this." *Id.* (quoting *Carlton v. Davisson*, 662 N.E.2d 1112, 1121 (Ohio Ct. App. 1995)). One way of rebutting an indictment is to show that "the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular." *Id.* (quoting *Deoma v. City of Shaker Heights*, 587 N.E.2d 425, 428 (Ohio Ct. App. 1990)).

Federal malicious-prosecution claims operate in much the same way. They require a plaintiff to "show, at a minimum, that there is no probable cause to justify an arrest or a prosecution." *Voyticky v. Village of Timberlake*, 412 F.3d 669, 675 (6th Cir. 2005). But well-established federal law holds that "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (quoting *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)). As with Ohio law, an exception to this rule exists "when the defendants knowingly present false testimony to the grand jury" to obtain an indictment, *Martin v. Maurer*, 581 F. App'x 509, 511 (6th Cir. 2014), or when they "testify with a reckless disregard for the truth," *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014).

Bickerstaff alleges that the indictment was falsely obtained because the grand jury "was not presented truthful information by and/or was blocked by Defendants from knowing all of the material facts involving the allegations against Plaintiff." Those material facts, according to Bickerstaff, are "Lucarelli's history of carrying on sexual and/or personal relationships with alleged victims, like Jasmine Harris, as well as the generally baseless nature of the evidence and allegations against Plaintiff."

But this bare declaration of impropriety does not equate to an allegation that the grand-jury proceedings were "significantly irregular" or that the indictment resulted from perjured testimony. *See Harris*, 422 F.3d at 327. McDuffie, not Lucarelli, testified before the grand jury. Bickerstaff does not point to any grand-jury proceedings or testimony in any part of her complaint to show how the proceedings were compromised. In fact, Bickerstaff did not take any steps to obtain a transcript of the grand-jury proceedings, which would have revealed the precise nature and content of McDuffie's testimony. Bickerstaff also fails to specify how the existence of Lucarelli's alleged relationships, improper as they might be, had any bearing on her indictment for the charges of intimidation and telecommunications harassment. Her complaint not only falls short in describing what was "baseless" about the evidence that resulted in her indictment, but she also does not point to any specific facts that would undermine the criminal proceedings against her. Nor does the record reflect any attempt by Bickerstaff to depose Harris in an effort to challenge the truthfulness of Harris's formal complaint to the police, which was the basis for the indictment.

Moreover, Bickerstaff fails to cite any caselaw that would support a malicious-prosecution claim based on similar pleadings. Our holding in *Meeks v. Larsen*, 611 F. App'x 277, 282-83 (6th Cir. 2015), instead militates in favor of dismissal. In that case, we held that the plaintiffs, who were members of the Hutaree militia group in Michigan, did not state a plausible malicious-prosecution claim against federal law-enforcement officers in connection with the government's investigation and prosecution of the group. *Id.* at 279, 283. The plaintiffs asserted that the government's "indictment was based on unlawfully seized evidence and false and misleading information." *Id.* at 282 (internal quotation marks omitted). But the plaintiffs neither made an "effort to identify what that false and misleading information was" nor proffered "any specific allegations" of what false evidence was presented to the grand jury. *Id.* The court observed that "[i]t is not sufficient, even at the motion-to-dismiss stage, to make only such vague and conclusory assertions without factual support." *Id.* at 283. Because Bickerstaff's malicious-prosecution claims are similarly vague and conclusory, they fare no better.

### 2.    *Retaliation claim against Lucarelli*

Bickerstaff also brought a retaliatory-prosecution claim against Lucarelli for interfering with her First Amendment right of free association.  A retaliation claim under 42 U.S.C. § 1983 requires proof that "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) . . . the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

As with malicious-prosecution claims in the common-law context, however, a plaintiff in a retaliatory-prosecution action must plead and show that the defendant lacked probable cause to press the underlying criminal charges.  *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006) (noting that "[b]ecause showing an absence of probable cause will have high probative force, . . . it makes sense to require such a showing as an element of a plaintiff's case"); *see also Barnes v. Wright*, 449 F.3d 709, 720 (6th Cir. 2006) (concluding that, because "the defendants had probable cause to seek an indictment," the plaintiff's First Amendment retaliation claim failed).  Given that Bickerstaff has alleged no specific facts to undermine the validity of her indictment, her retaliation claim likewise fails.  *See id.*

### 3.    *Claims of reckless, wanton, or willful conduct and using a sham legal process, in violation of Ohio Revised Code § 2921.52*

Bickerstaff further alleges that the individual defendants "wantonly and willfully committed reckless violations of the law" when they "prosecut[ed] Plaintiff without probable cause."  As an initial matter, reckless, wanton, or willful conduct is not a stand-alone cause of action; it is instead "a level of intent [that] negates certain defenses" in a negligence action. *Bradley v. City of Cleveland*, No. 1:11CV781, 2012 WL 775106, at *3 (N.D. Ohio Mar. 7, 2012) (citation and internal quotation marks omitted) (applying Ohio law).  Bickerstaff's cause of action is thus properly characterized as a claim under Ohio Rev. Code § 2921.52, which prohibits using a sham legal process to "commit or facilitate the commission of an offense."  *Id.* § 2921.52(B)(3).

But Bickerstaff cannot satisfy a key element required under this statute.  Relevant to this case, the statute defines a sham legal process as an instrument that was "not lawfully issued."  *Id.* § 2921.52(A)(4)(a).  These statutory claims thus fail for the same reasons that Bickerstaff's malicious-prosecution and retaliation claims fail:  She has not pleaded any allegations to undermine the validity of her indictment.  Because Bickerstaff has not sufficiently alleged that probable cause was lacking, she cannot show that her indictment was "not lawfully issued."  Her claims under Ohio Rev. Code § 2921.52 are therefore without merit.

### 4.    *Abuse-of-process claims*

Bickerstaff argues that, even if the defendants instituted a legal proceeding in proper form and with probable cause, the district court erred when it dismissed her abuse-of-process claims against Hill, Legg, and McDuffie.  In Ohio, the tort of abuse of process has three elements:  "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citation omitted); *see also Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 118 (Ohio 1994) (noting that the tort for abuse of process "has developed for cases in which [a] legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed" (citation and internal quotation marks omitted)).

Notably, an abuse-of-process claim differs from a malicious-prosecution claim in that it does not require a plaintiff to show the absence of probable cause.  But an abuse-of-process claim will not survive a motion to dismiss when it is supported only by "conclusory allegations regarding the defendants' ulterior motives with no facts to support those contentions." *Hahn v. Star Bank,* 190 F.3d 708, 718 (6th Cir. 1999).

Here, Bickerstaff alleges that the individual defendants abused the legal process "to retaliate against her for contacting a witness with whom Defendant Lucarelli was having a personal relationship."  She contends that this abuse of process occurred "when [the defendants]

orchestrated the arrest of Plaintiff through a series of dishonest actions, including but not limited to offering false statements and testimony against her." But Bickerstaff points to no specific facts to support these conclusory allegations nor to any specific actors to whom she attributes such dishonesty.

Moreover, the complaint is devoid of facts indicating that Hill, Legg, or McDuffie acted with an ulterior purpose. There are no allegations suggesting that McDuffie was even aware of Lucarelli's alleged relationships with other women, much less Harris. And even assuming that Hill and Legg were aware of Lucarelli's alleged relationship with Harris and stayed silent, the complaint does not show how Hill and Legg participated in the prosecution, let alone orchestrated her arrest or offered false statements and testimony against her. In any event, even if one assumes that Hill, Legg, and McDuffie had "bad intentions," Bickerstaff fails to allege any facts showing that the process itself was perverted. *See Hahn*, 190 F.3d at 718. Bickerstaff's abuse-of-process claims therefore cannot survive.

### 5. *Civil-conspiracy claims*

We now come to Bickerstaff's civil-conspiracy claims. Because Bickerstaff's conspiracy claim against Lucarelli survived the pleading stage, and because she does not challenge the grant of summary judgment in favor of Lucarelli, we will not address the claim as it relates to him. We will instead address the claims against only Hill, Legg, and McDuffie.

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). To prevail on this claim, a plaintiff must show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (citation omitted). "Although circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.* (brackets, citation, and internal quotation marks omitted).

Bickerstaff argues that the district court erred because "all Defendants knowingly wrote and/or solicited and/or facilitated and/or processed and/or presented false statements against Plaintiff which falsely informed and guided a Grand Jury to indict her of crimes she never committed." But this broad statement is only a legal conclusion that is unsupported by any specific allegations of falsity. *See Heyne*, 655 F.3d at 563-64 (rejecting the statement that "Defendants have conspired among themselves and with others unnamed . . . to knowing and intentionally deny [Plaintiff's] constitutional rights" as a legal conclusion "masquerading as factual allegation[]").

Bickerstaff bases her conspiracy claims in part on a text-message conversation in which Lucarelli told McDuffie that Bickerstaff was a private investigator who showed up at Harris's house, and that Harris declined to be interviewed. Furthermore, Bickerstaff quotes Lucarelli as stating: "If they no bill it don't worry about it," in reference to a possible indictment.

Bickerstaff fails to allege anything about this conversation that was untruthful. Moreover, her reliance on the conversation as the main factual basis for her complaint actually undercuts her position that McDuffie conspired with Lucarelli to maliciously prosecute her. First, Lucarelli's comment that he did not want the matter to be presented to the grand jury contradicts Bickerstaff's theory that Lucarelli prosecuted Bickerstaff for the express purpose of concealing his relationship with Harris. Second, Lucarelli's statement to McDuffie not to worry "[i]f they no bill it" indicates that he was not concerned about the outcome of the proceeding. These statements thus undermine any plausible allegation that he and McDuffie were involved in a "common plan" to falsely obtain an indictment.

Moreover, Bickerstaff fails to allege that McDuffie was even aware of Lucarelli's relationships with Harris or any other female victims or witnesses. McDuffie could not have plausibly shared in the "general conspiratorial objective" to conceal conduct of which she had no knowledge. *See Heyne*, 655 F.3d at 563.

Bickerstaff also failed to allege facts indicating that Hill and Legg were engaged in a common plan with Lucarelli to injure her. The only factual assertion that she provided regarding Hill and Legg is a section of her complaint titled "Supervisor and Fellow Officer Silence," which

describes text-message conversations that Lucarelli had with Hill and Legg regarding Lucarelli's alleged relationships with victim-witnesses. Beyond these allegations, Hill and Legg are referred to only collectively in the context of vague and conclusory allegations that "all Defendants knowingly wrote and/or solicited and/or facilitated and/or processed and/or presented false statements." Bickerstaff's complaint does not allege that either Hill or Legg had any specific knowledge of Lucarelli's relationship with Harris in particular or how the two officers made "false statements" in connection with her prosecution. Because the allegations are "naked assertion[s] devoid of further factual enhancement," they are not sufficient to survive the motion-to-dismiss stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

### 6. *Municipal-liability claim against the City of Cleveland*

We finally turn to Bickerstaff's allegations of municipal liability against the City of Cleveland. "A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). This means that the plaintiff must show "'a direct causal link' between the policy and the alleged constitutional violation such that the [municipal policy] can be deemed the 'moving force' behind the violation." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (citation omitted).

Bickerstaff claims that the City of Cleveland had a policy of inadequate training and supervision because it allowed the police officers who supervised Lucarelli to do nothing to discipline him or stop him from engaging in inappropriate relationships. But to prevail on such a theory, Bickerstaff must show that the City of Cleveland's policy was "representative of (1) a clear and persistent pattern of illegal activity, (2) which the [City] knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the [City's] custom was the cause" of the deprivation of her constitutional rights. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005) (holding that a policy or custom cannot be established solely by a single instance of an employee's alleged misconduct).

Bickerstaff's speculative allegations fall short of stating a claim against the City. Beyond the blanket assertions that the City "condon[ed]" or "tolerat[ed]" police officer misconduct, she points to no facts that would indicate the existence of such an official policy or custom. Nor does Bickerstaff put forth any facts suggesting that the City ignored a "clear and persistent pattern" of misconduct. *See id.* With no factual allegations showing a formal policy or any prior incidents to support the City of Cleveland's adoption of such an informal practice or custom, Bickerstaff's *Monell* municipal-liability claim accordingly fails.

**D.     Bickerstaff's discovery-related challenge**

Bickerstaff next alleges that the district court "abused the discretion it enjoys in regulating the pace and timing of discovery," apparently referring to the court-imposed discovery deadline of April 10, 2015. Despite the fact that Bickerstaff was permitted to conduct discovery beginning August 4, 2014, she asserts that the court's April 2, 2015 order dismissing two claims against Lucarelli "left [Bickerstaff] with just eight days to prepare and fully develop what was left of her case."

As an initial matter, Lucarelli challenges Bickerstaff's ability to raise this issue on appeal. He contends that Bickerstaff's notice of appeal fails to identify any issue relating to discovery, much less a particular discovery order or decision rendered by the district court. Lucarelli argues that this failure deprives us of jurisdiction under Rule 3 of the Federal Rules of Appellate Procedure, which requires the appealing party to "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B).

We have held that Rule 3(c)(1)(B) is "mandatory and jurisdictional, requiring strict obedience even in the face of harsh results." *Ramsey v. Penn Mut. Life Ins. Co.*, 787 F.3d 813, 819 (6th Cir. 2015) (brackets, citation, and internal quotation marks omitted). Nevertheless, "[a] mistake in designating the judgment appealed from is not always fatal, so long as the intent to appeal from a specific ruling can fairly be inferred by probing the notice and the other party was not misled or prejudiced." *Sanabria v. United States*, 437 U.S. 54, 67 n.21 (1978).

Here, the notice of appeal does not fairly imply Bickerstaff's intent to appeal from a specific discovery order. The notice references only three of the district court's orders: (1) the

March 27, 2015 order dismissing all claims against Hill, Legg, McDuffie, and the City of Cleveland; (2) the April 2, 2015 order dismissing in part the claims against Lucarelli; and (3) the October 23, 2015 order granting summary judgment to Lucarelli on the three remaining claims. None of these orders contains any reference to discovery issues or timelines. Moreover, Bickerstaff does not identify the discovery order or orders that she is challenging on appeal. She inconsistently states that the court's first extension through February 27, 2015 was "hardly enough time to develop a suit," but then targets the April 10, 2015 deadline as "a wholly insufficient amount of time."

In sum, the defendants could not reasonably be expected to infer from the notice of appeal that any discovery issues would be contested. Bickerstaff is bound by the "mandatory" and "strict" jurisdictional requirements of Rule 3(c)(1)(B). *See Ramsey*, 787 F.3d at 819. We accordingly dismiss this issue for lack of jurisdiction.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.