NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0049n.06

No. 17-1566

<table>
<tr><td>UNITED STATES COURT OF APPEALS<br>FOR THE SIXTH CIRCUIT</td><td></td><td>**FILED**<br>Jan 25, 2018<br>DEBORAH S. HUNT, Clerk</td></tr>
</table>

|  |  |  |
|---|---|---|
| TIMOTHY FINLEY, | ) | |
| | ) | |
| Plaintiff–Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ERICA HUSS, et al., | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendants–Appellees. | ) | |
| | ) | |
| | ) | |

**BEFORE:    DAUGHTREY, McKEAGUE, and BUSH, Circuit Judges.**

McKEAGUE, Circuit Judge.   Finley is a Michigan prisoner with several severe psychiatric disorders.   He claims that Huss and Schroeder, two prison wardens, violated his rights under the Constitution and federal law by placing him in administrative segregation—instead of a mental-health unit—after he swallowed a razor blade.   Specifically, Finley raised Eighth Amendment deliberate-indifference claims, procedural due process claims, and claims under the Americans With Disabilities Act ("ADA") and Rehabilitation Act ("RA").   The district court dismissed the complaint sua sponte under the Prison Litigation Reform Act ("PLRA") prior to service, holding that it failed to state a claim on which relief could be granted.   Because Finley can state an Eighth Amendment claim, we **VACATE** the dismissal of his complaint and **REMAND** with instructions to grant leave to amend.   The district court did not express a reasoned opinion on anything besides the Eighth Amendment claim, and neither do we.   Those matters may be addressed on remand if they are included in Finley's amended complaint.

**I**

During his incarceration in a Michigan state prison, plaintiff Timothy Finley, a mentally ill inmate suffering from bipolar disorder, borderline personality disorder, and antisocial personality disorder, intentionally swallowed a razor blade. This was not new terrain for Finley, who has a long history of self-harm and suicide attempts. In Finley's own words:

> As of recent, from 8/30/16 to 10/05/16 Plaintiff has cut his arm open with a razor making at least 25 lacerations. I have swallowed 9 razors, been transfer[r]ed to Marquette General Hospital a total of five times, transfe[r]red to St. Francis in Esc[a]naba once, and put on a medical jet and flown to U. of M in Ann Arbor for emergency surgery. Ive had a total of four neck surgeries to remove a razor lodged in my throat on 9/1/16. Ive been hooked up to breathing machines to sustain life. Ive had 4 stomach surgeries as well to remove razors.

Additionally, Dr. Terry Meden, a psychiatrist, stated in his physician's certificate that Finley twice has attempted to hang himself.

As a result of his illnesses, Finley has been prescribed various psychiatric and antipsychotic medications and has been the subject of many discussions by prison officials and physicians. Even so, Finley somehow gained access to a razor and swallowed it sometime in September 2016. However, due to his mental state, he "refused the local hospital's recommendation to extract [the] razor from his esophagus. That razor became lodged." As a result, Finley was placed in administrative segregation (solitary confinement) pending a hearing. Later, on September 12, 2016, Mandi Salmi, the mental-health professional primarily responsible for Finley's treatment in prison, filled out a "Misconduct Sanction Assessment" that noted that Finley "is on the mental health caseload" and that "[p]rolonged segregation placement is likely to deteriorate his mental health status." Due to resulting complications from swallowing the razor, Finley was airlifted to University of Michigan Hospital for surgery. Upon his return to

Marquette Branch Prison on October 5, 2016, however, Finley again was placed in administrative segregation.

Michigan Department of Corrections Policy Directive § 04.05.120 on "Segregation Standards" states unambiguously:

> A prisoner who is on an outpatient corrections mental health services active caseload or who is receiving special education services shall be classified to administrative segregation *only after consultation with a Qualified Mental Health Professional, the Mental Health Unit Chief, and/or special education teacher to determine if the prisoner's mental health needs or limitations can be met in administrative segregation . . . .* [The Security Classification Committee] shall consider the prisoner's need for correctional mental health services, including additional treatment and medication, in determining whether administrative segregation is the most appropriate placement. (Emphasis added.)

Nevertheless, Acting Deputy Warden Erica Huss did not consult Salmi or any other mental-health physician prior to the hearing conducted on September 26, 2016, which officially assigned Finley to administrative segregation.

Acting under another Michigan Department of Corrections Policy Directive, Salmi later recommended to a different Acting Deputy Warden (Sarah Schroeder) that Finley be transferred to a mental-health unit. Schroeder agreed, which, under prison policy, required her to ensure the prisoner's transfer "as soon as possible but no later than three business days after receipt of the recommendation." Nevertheless, as of the date Finley signed his federal court complaint—October 31, 2016—he remained in administrative segregation and had not been moved to the prison's mental-health unit. In fact, the district court noted that Finley was not transferred to the mental-health unit until January 2017, more than three months after his initial placement in administrative segregation.

Finley's pro se complaint named Huss and Schroeder as defendants, alleging deliberate indifference to his serious medical needs, deprivation of liberty without due process, and

violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213, and the Rehabilitation Act, 29 U.S.C. § 794. Initially, he sought preliminary and permanent injunctive relief requiring him to be moved to a mental-health unit. After the prison moved him to a mental-health unit in mid-January 2017, he withdrew his request for a preliminary injunction and moved to amend his complaint so that he could add a claim for damages. Under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(e)(2)(B), 28 U.S.C. § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1), the district court reviewed the complaint and, sua sponte, dismissed the action for failure to state a claim upon which relief could be granted. The court also denied leave to amend, in obedience to our precedent barring district courts from granting leave to amend when a prisoner's claim fails under the PLRA. *See, e.g.*, *Benson v. O'Brian*, 179 F.3d 1014, 1016 (6th Cir. 1999).

Finley appealed, and he is now represented by counsel. In addition to urging reversal on the merits, he asserts that the district court should have granted him leave to amend. Because we agree that Finley adequately pleaded violations of the Eighth Amendment under 42 U.S.C. § 1983, we hold that the district court erred in dismissing his complaint. As a result, the PLRA does not bar the amendment of Finley's pleadings, and the district court should permit him to submit an amended complaint under Rule 15(a). Because the district court said little about Finley's due process and ADA/RA claims, we express no opinion on the viability of those claims.

**II**

We review *de novo* an order dismissing a claim under the PLRA for failure to state a claim. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). In conducting such a review, we accept the plaintiff's allegations as true, draw all reasonable inferences in favor of the plaintiff,

and construe the entire complaint in the light most favorable to the plaintiff. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (citation omitted). Even so, a plaintiff still must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Moreover, overlaying these principles in this case is the well-recognized understanding that "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**A**

In his complaint, Finley claims that Huss and Schroeder were deliberately indifferent to his medical needs. These allegations, if true, would state a claim under the Eighth Amendment.

A deliberate-indifference claim has three elements. First, the prisoner must plead facts showing that his ailment was sufficiently serious to warrant constitutional concern. *Bays v. Montmorency Cty.*, 874 F.3d 264, 268 (6th Cir. 2017). Second, he must show that the official in question was subjectively aware of facts "from which the inference could be drawn that a substantial risk of serious harm exist[ed]." *Id.* Third, he must plead that the official, in fact, drew that inference, but disregarded the risk anyway. *Id.*

Finley's condition is obviously serious. In *Bays*, we held that a prisoner who described "severe psychological symptoms" several days before committing suicide had adequately satisfied this element. Finley swallowed a razor blade. That is more than enough to indicate a severe psychological disorder. *See Grabow v. Cty. of Macomb*, 580 F. App'x 300, 307 (6th Cir. 2014) (holding that a plaintiff who exhibits suicidal tendencies during detention has satisfied this element).

Under the facts pleaded by Finley, it seems almost equally obvious that officials knew that Finley was at a substantial risk of serious harm, and yet they consciously disregarded that risk. The deputy wardens knew that the prison's mental-health staff had diagnosed Finley with a severe mental illness. Finley's behavior had required hospitalization on more than one occasion—including an airlift to the University of Michigan for emergency surgery. The mental-health staff also told Huss and Schroeder that solitary confinement would only make this bad situation worse, due to the sensory deprivation that accompanies that punishment. Indeed, prison policy required Huss and Schroeder to follow certain procedures in these situations, and Finley asserts that neither defendant adhered to these policies. Again, the facts in *Bays* were not nearly this problematic, and yet the panel still found a jury question. *Bays*, 874 F.3d at 268–69; *see also Harris v. City of Circleville*, 583 F.3d 356, 369 (6th Cir. 2009) (disregard of policy raises strong suspicion of deliberate indifference).

The district court nevertheless dismissed the complaint because Finley had received some treatment in the form of antipsychotic drugs. Although officials can avoid constitutional liability by addressing the inmate's serious need, they cannot escape a deliberate-indifference claim by fetching a band-aid if an inmate is hemorrhaging. *See Bays*, 874 F.3d at 269; *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014). *Bays* is instructive here. In that case, the defendant nurse provided medication to the inmate and tried to fast-track the prisoner for more intensive treatment. 874 F.3d at 270. But in light of the obvious risk that the prisoner would commit suicide, the failure to treat, promptly, a condition that "all agree required immediate or near-immediate care" precluded summary judgment. *Id.* The same is true here. Antipsychotic drugs can only manage psychiatric disorders, not cure them. And if the prison psychiatrist states that

solitary confinement will exacerbate a mental-health disorder, claiming that medication makes it permissible is a little like bandaging a person's broken leg but then taking away his crutches.

We also disagree with the district court's apparent belief that Finley is not entitled to the Eighth Amendment relief because the actions of the defendants in this case were not as egregious as those in *Easley v. Nixon-Hughes*, No. 1:06cv863, 2009 WL 237733 (S.D. Ohio, Jan. 29, 2009). In *Easley*, the plaintiff alleged "that on one occasion he was placed on a suicide watch and attempted suicide while the officer assigned to monitor him slept. He further allege[d] that another corrections officer refused to summon mental health personnel and told Plaintiff to hang himself." *Id.*, 2009 WL 237733, at \*1. After citing *Easley*, the district court in this case dismissed Finley's Eighth Amendment claim because Finley did not "claim that he was encouraged to commit suicide or given the opportunity to do so by untrained corrections officers." But a prisoner need not allege the worst-case scenario in order to get past the PLRA's screening system.

At this early stage, we cannot agree with the district court that Finley has failed to state an Eighth Amendment claim. This is particularly true because Finley was proceeding pro se at the time. Although he may not ultimately prevail, his complaint should be allowed to proceed past the PLRA's filtering mechanism. For that reason, the district court should also grant Finley leave to amend, since the PLRA's bar to amendment has no vitality when the prisoner states a valid claim. *See O'Brian*, 179 F.3d at 1016.

**B**

Finley also raised constitutional due process claims and disability-discrimination claims under federal law. However, in dismissing the complaint, the district court did not address these

claims in any meaningful fashion. Because we vacate the dismissal of Finley's complaint and remand with leave to amend, those issues are not ripe for our review.

### III

Finley has alleged facts stating an Eighth Amendment deliberate-indifference claim; the district court should have permitted him to pursue it. Therefore, we **VACATE** the district court's dismissal of the complaint and **REMAND** the case with instructions to grant leave to amend.

MARTHA CRAIG DAUGHTREY, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's holding that Timothy Finley alleged sufficient facts in his *pro se* complaint to state an Eighth Amendment claim of deliberate indifference against defendants Erica Huss and Sarah Schroeder. Consequently, I also concur in the majority's recognition that, on remand, Finley should be allowed to amend his complaint to bolster any other claims he wishes to assert.

Unlike the majority, however, I would hold that Finley already has alleged sufficient facts to allow him, at this early stage of this litigation, to proceed further with his serious allegations of violations of the Due Process Clause and of the Americans with Disabilities Act. I thus respectfully dissent from any implication that the district court was justified in dismissing those additional claims of wrongdoing.