**CUDAHY COMPANY, Plaintiff,**

v.

**AMERICAN LABORATORIES, INC.,
Jack E. Jackson, William E. Phalen
and Frank R. West, Defendants.**

**Civ. 03014.**

United States District Court,
D. Nebraska.

June 8, 1970.

William Sawtell, Jr., and Joseph Po-
lack, of Morsman, Fike, Sawtell & Davis,
Omaha, Neb., for plaintiff.

Lyle E. Strom, and C. L. Robinson, of Fitzgerald, Brown, Leahy, McGill & Strom, Omaha, Neb., for defendants.

## MEMORANDUM AND ORDER

RICHARD E. ROBINSON, Chief Judge.

This matter was tried to the Court commencing on April 27, 1970. Diversity jurisdiction is established. After trial the Court directed the parties to file post-trial briefs addressing themselves to the issue of whether or not plaintiff established any grounds for relief by way of an injunction or for damages. Should the Court find a basis for relief the parties would then, at a later date, address themselves to the remedial matters. The Court is now ready to announce its decision as to whether plaintiff has established a right to relief. In so doing it announces its findings of fact and conclusions of law on that issue.

The case arises out of the activities of certain employees of the plaintiff both during and after their employment. The remaining defendants, other than Phalen and Jackson, the employees in question, are either the recipients of their alleged misconduct [American Laboratories Incorporated] or the one who allegedly induced [West] these defendant-employees to commit such misconduct. These employees made plans and eventually succeeded in setting up a business which is now in direct competition with plaintiff. Plaintiff's allegations generally center on claims of unfair business practices and breach of a fiduciary duty owed to their employer by Jackson and Phalen both during and after their employment.

More specifically plaintiff contends that plant designs, procedures and techniques utilized in American Laboratories processing of animal by-products for pharmaceutical purposes, data on profits and costs of production, and detailed customer lists taken from plaintiff, are trade secrets and entitled to protection. Plaintiff also claims solicitation of employees and customers and failure to apprise plaintiff of certain facts and business opportunities which were breaches of their duties of loyalty to their employer while still in plaintiff's employ.

■■ At the outset it should be noted that Nebraska law is controlling. However, this state's highest court has not passed directly on almost all of the issues here raised. There is also a lack of any meaningful dicta available to this Court in attempting to course decisions in the fields in question within the state. This Court has therefore followed the rule that in the absence of instructive decisions or considered dicta by Nebraska Courts on the points in question, the Court may consider any other materials persuasively indicating the course of decisions within the state. Cooney v. Moomaw, 109 F.Supp. 448 [D.Neb.1953]. It is also generally the rule that in the absence of state law a federal court should make use of all available data on the questions involved, including restatements and treatises and where appropriate may assume state law will follow the majority rule. Glassman Construction Company v. Fidelity & Casualty Co. of New York, 123 U.S.App.D.C. 1, 356 F.2d 340 [1966].

Addressing itself to the matter of trade secrets, the Court is faced with the initial problem of determining what constitutes a trade secret. The definition and criteria utilized in many cases and which is generally considered to be the favored approach to determine if a trade secret is entitled to protection has been stated by the Eighth Circuit as follows:

"[T]his court recognized and approved the general rule that a trade secret consists of any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. See also, Restatement, Torts § 757. The essential elements of a cause of action for appropriation of a trade secret are [1] existence of a trade secret [2] acquisition of the secret as a result of a

confidential relationship, and [3] unauthorized use of the secret. \* \* \* This protection given to trade secrets is a shield, sanctioned by the courts, for the preservation of trust in confidential relationships; it is not a sword to be used by employers to retain employees by the threat of rendering them substantially unemployable in the field of their experience should they decide to resign. This shield is not a substitute for an agreement by the employee not to compete with his employer after the termination of employment." E. W. Bliss Co. v. Struthers-Dunn, Inc., 408 F.2d 1108, 1112 [8th Cir. 1969].

Section 757 of the Restatement of Torts mentioned by the Circuit Court contains the following factors to be considered when determining what constitutes a trade secret:

"[1] the extent to which the information is known outside of his business; [2] the extent to which it is known by employees and others involved in his business; [3] the extent of meaures taken by him to guard the secrecy of the information; [4] the value of the information to him and to his competitors; [5] the amount of effort or money expended by him in developing the information; [6] the ease or difficulty with which the information could be properly acquired or duplicated by others."

▆▆▆ Plaintiff's claim of trade secrets may be broken down into three areas; data on profits and costs of production; customer information; and plant design and production process techniques. Taking the matter of recorded data on profits and production first, it is easily disposed of because of plaintiff's failure to carry its burden of showing any unauthorized acquisition of any recorded data even if it were considered to be a trade secret. Defendants categorically deny ever taking or using any of this data or turning over any recorded financial statement or cost figures to Mr. West's accountant or to anybody else to aid in the formation of the new business. If it is plaintiff's contention the defendants did not utilize these printed documents but rather the knowledge gained from defendant Jackson's constant exposure to this type of information then that claim also must fail because it is not a trade secret. E. W. Bliss Company v. Struthers-Dunn, Inc., supra; Venn v. Goedert, 319 F.2d 812, 815 [8th Cir. 1963]. A review of the position analysis of Mr. Jackson, done for Cudahy's benefit, clearly indicates that Mr. Jackson has a wealth of knowledge and expertise in the production and marketing of Cudahy's pharmaceutical products. Plaintiff's attempt to tie the skill and experience of Mr. Jackson to documented data thereby hoping to gain the classification of that data as a trade secret is simply not well founded. Such general data would be common knowledge to anyone of Mr. Jackson's experience and would not be peculiar to Cudahy. As previously stated the status given trade secrets is not to be used as a sword to prevent employees from rendering their services, based on knowledge and experience, to somebody other than that one employer. That is exactly what plaintiff would accomplish if its claim of trade secret as to these items were successful.

▆▆▆ The matter of attempting to classify the two customer lists as trade secrets is also not convincing. Regardless of who compiles the list, it is the *character* of the formula or list involved that is determinative as to its classification as a trade secret. Any customer list must be of a specific and particular value to the employer. Van Products Co. v. General Welding & Fabricating Co., 419 Pa. 248, 213 A.2d 765 [1965]; Restatement, Torts § 757 Comment [b]. The actual value of these lists to Cudahy is not great. The evidence would reveal that it is not the processor who is able to actively recruit more customers that will be successful but rather the one who is able to satisfy by the quality and quantity of his product and one who has the ability to produce a product suitable to the particular needs of the customer.

**1344**

To be classified as a trade secret the Restatement would also give consideration to the measure of care taken to protect the list as well as the accessibility of the list to plaintiff's own employees. There is no evidence presented to indicate that these lists were secretly held or that any substantial precautions were taken to protect them from disclosure. See Space Aero Products Co. v. R. E. Darling Co., 238 Md. 93, 208 A.2d 74 [1965]. There were no precautions against these lists leaving the premises nor were they protected so as only to be accessible to certain employees. In fact a previous employee had taken similar lists with him when he left. The Restatement also would consider whether the list could be easily acquired or duplicated by others in the same trade or business. As far as the "East Book" [lists of eastern customers of Cudahy and one of the lists in question], certain witnesses who were in the same field testified that a review of this list indicated that most of the names on the list were known by them to be customers in the industry. Plaintiff also attempts to show, by the use of marketing consultants, the value of such a compilation and the time and effort expended in its preparation. While that is a factor to be considered the evidence is that time and effort would be by a novice in the field. Mr. Jackson, or anyone else with his general background in the field, would be able to reduce that cost and effort considerably. With regard to the general customer list, even if it were a trade secret, there is no evidence of any unauthorized use. The list was turned over to defendants' counsel almost immediately and never used in the business. Even a review of the "East Book", when compared with the sales of American Laboratories would indicate no striking resemblance. In fact there are a considerable number of sales to companies in the East that are not contained in this book. Any injunction preventing the solicitation of customers on these lists would effectively restrain defendants from competing with plaintiff in a rather broad area. When the lists in question are generally known in the trade or are rather easily obtained through the knowledge of one in the field and where the lists are not of a character to be one of the essential elements of information which makes the business successful and where plaintiff has made no showing prior to this suit to protect the lists, the lists cannot be entitled to protection as trade secrets.

■ The third and final claim of a trade secret relates to design of the defendants' plant and use of production process techniques. The Court also holds here that plaintiff has failed to carry its burden of establishing that either of these claims are in fact trade secrets. Plaintiff must carry the burden of establishing that the processes and design are in fact trade secrets. Venn v. Goedert, supra. While plaintiff has established that this information was within the defendants' knowledge and that there are similarities in process and design, the Court believes that plaintiff has fallen far short of establishing the existence of trade secrets. Taking the design of defendants' new plant first, the testimony of Cudahy's own chief engineer points out as well as any that the skill utilized in designing the defendants' plant was nothing more than general engineering principles coupled with readily available machinery and a general knowledge, as had by Mr. Phalen, of the procedures used in processing of raw materials for pharmaceutical purposes. Both plaintiff and its chief engineer have been unable to point to any specific design features which are anything but the general knowledge of engineers or chemists experienced in this trade. Secondly, plaintiff's claims that defendants used its processing techniques must also fall for failure to carry its burden of establishing the existence of trade secrets. Plaintiff's arguments lack specificity. Plaintiff's brief seems to rely upon their technical instruction booklets and their brief claims this to be "a distillation of years of experience of the plaintiff in assembling a number of steps in combination to produce a desired end." Their brief

admits no uniqueness in any given step. That type of information, within the knowledge of an employee, is exactly what should *not* be given the protection of a trade secret classification.

It is uncontradicted that Mr. Phalen contributed substantially to the materials contained in these instructions. He was also the man in charge of the plant. He was responsible for much of the process. To deny him the right to practice his trade by attempting to establish the general experience and knowledge of the employer as a trade secret when actually the employees' knowledge and experience in his trade is a substantial contribution to this general process is not the type of situation within the contemplation of the law guarding the disclosure of trade secrets. Any knowledge and experience of this nature desired to be protected is more properly the subject matter of a covenant not to compete. There is none present in this case.

Even without plaintiff's statement in its brief relying upon a general knowledge or combination concept, this record fails to produce any special process or combination so superior or so distinguishable to merit trade secret classification. There is no showing that any specific process, or the entire process, produced any unusual competitive advantage. To the contrary the testimony would indicate that the processes and techniques are rather common and while there are variations no manufacturer has a competitive advantage because of the small variations occurring from producer to producer. There must be under the trend today some degree of specificity when affording protection to trade secrets. The Eighth Circuit, even though generally speaking in a context of the scope and breadth of an injunction order indicates the need for presentation of proof as to a specific process in order to avoid restraining former employees from engaging in perfectly legal employment. If the injunctive relief is to be narrow the proof must be specific. See E. W. Bliss Co. v.

Struthers-Dunn, Inc., supra. See also Ferranti Electric, Inc. v. Harwood, 43 Misc.2d 533, 251 N.Y.S.2d 612 [1964]. Plaintiff has not made any showing as to some of the other Restatement factors previously stated. There is no showing of any unusual costs or efforts expended in developing this process nor any substantial attempts to guard against its acquisition by competitors.

Those cases relied upon by plaintiff for a claim of a unique or novel combination of processes are distinguishable on their facts. There is no evidence here as in Sperry Rand Corporation v. Rothlein, 241 F.Supp. 549 [D.Conn.1964] of the great expense involved in development or the superiority of the product or the attempts to keep the process secret. All of those factors were present in the above-mentioned case.

In summary plaintiff gains no distinct competitive advantage from its designs, processes or techniques; they are generally known in the trade; the protection against their acquisition by outsiders was not great, and there is no evidence of unusual costs or efforts expended with regard to any of these processes, designs and techniques.

Having failed to establish either the use or the existence of trade secrets by the defendants after the termination of the employment of Phalen and Jackson, plaintiff can then only rely upon the breach of these defendants' duty of loyalty to their employer while still in Cudahy's employ or their inducement to other employment by West. Plaintiff essentially claims that Phalen or Jackson violated their duty to it by not revealing the business opportunity available in the brokering of raw glands; the fact that they were going into competition with plaintiff; by selling raw materials to a competitor; and by the solicitation of certain customers and fellow employees prior to terminating their employment.

There are two important principles applicable to all of these claims and which should be discussed initially. The first is whether a departing employee is

required to make full disclosure of any acts undertaken in preparation for entering into competition with a former employer. It is not the failure to disclose itself that is harmful but rather the act or acts which must be disclosed that constitutes the actionable wrong. The nature of the act will determine whether disclosure is necessary. If the act done is violative of the employee's duty of loyalty then it should be revealed in the same way as any agent faced with a conflict of interest must reveal the facts leading to the conflict. Even if there has been a revelation after the fact the employee would probably still be liable. See Bancroft-Whitney v. Glen, 64 Cal.2d 327, 49 Cal.Rptr. 825, 411 P.2d 921 [1966]. Likewise any act, even though not in preparation for competition with the employer but yet inimical to the best interests of the employer, is not actionable because of any failure to reveal but because that act was actually harmful to the employer. As stated in *Bancroft-Whitney,* and as an analysis of the cases cited by plaintiff and also cited in *Bancroft-Whitney* reveals, there are cases, while their language would indicate a duty to reveal, are not actually predicated on disclosure "but upon some *particular circumstance* which rendered nondisclosure harmful." Bancroft-Whitney Co. v. Glen, supra, at pg. 936, 49 Cal.Rptr. at pg. 840, 411 P.2d at pg. 936.

The second and somewhat competing principle to the duty of loyalty owed an employer is the employee's right to make *preparations* to enter into competition with his former employer. It is again the nature and character of the act performed that will determine if there has been an actionable wrong. It is whether or not the act performed causes some particular injury to the employer. Bancroft-Whitney Co. v. Glen, supra; United Board and Carton Corp. v. Britting, 63 N.J.Super. 517, 164 A.2d 824 [1959]. "The mere planning, without more is not a breach of an employee's duty of loyalty and good faith to his employer." Cowley v. Anderson, 159 F.2d 1 [10th Cir. 1947]; Keiser v. Walsh, 73

App.D.C. 167, 118 F.2d 13 [1941]; Metal Lubricants Co. v. Engineered Lubricants Co., 411 F.2d 426 [8th Cir. 1969]; National Rejectors, Inc. v. Trieman, 409 S.W.2d 1 [Mo.1966]; Restatement, Agency 2d, § 393, comment [e]. Admittedly the mere decision to enter into competition will eventually prove harmful to the former employer but because of the competing interests of allowing an employee some latitude in switching jobs and at the same time preserving some degree of loyalty owed to the employer the mere entering into competition is not enough. It is something more than preparation which is so harmful as to substantially hinder the employer in the continuation of his business. Obviously then each case must be decided upon its own facts. Because of the competing interests the actionable wrong is a matter of degree. "No ironclad rules as to the type of conduct which is permissible can be stated, since the spectrum of activities in this regard is as broad as the ingenuity of man itself." Bancroft-Whitney v. Glen, supra, at pg. 935, 49 Cal.Rptr. at pg. 839, 411 P.2d at pg. 935.

Governed by these principles plaintiff's contention that Jackson owed a duty to reveal that he was going into competition against Cudahy is without merit. Even though Jackson was the representative for and the advisor to Cudahy in the marketing and sales field, the rule is not broad enough to require him to reveal the impending competition to his employer as long as there were no actions on his part, while preparing his new business, that were harmful to the employer. In the first place he is under no duty to make the revelation unless he has done something inimical to his employer's interests. Secondly, the law specifically allows him to go into competition, without revealing such, provided again, that he not do anything harmful to his employer's interests.

With regard to plaintiff's claim of solicitation of plaintiff's customers, it is also without merit. There is absolutely no evidence that Jackson or

Phalen attempted, while still employed, to solicit plaintiff's customers for the new business. Certain customers were notified of their intent to leave and go into direct competition but that, in itself, is permissible. A departing employee may not solicit his employer's customers but he may advise the customers of his intention to leave and set up a competing business. Ritterspusch v. Lithographic Plate Service, 208 Md. 592, 119 A.2d 392 [1956]; Operations Research, Inc. v. Davidson & Talberg, Inc., 217 A.2d 375, 376 [1966]. Likewise there is no evidence that defendant-employees solicited any of plaintiff's raw material suppliers for the new business. In fact plaintiff very seldom sought outside suppliers. Plaintiff suggests that there was solicitation of finances for the new business from customers which indirectly is tantamount to solicitation of the customer's business. The evidence is clear that Jackson or Phalen never solicited finances from customers. To the contrary these customers actively solicited Jackson to allow them to partially finance the new operation. Both of the employee-defendants as well as the customers deny any tie-in agreement that they would be customers in exchange for their finances. Their reason for desiring to provide the financing was their fear that some time in the future they would be in serious need of a source of supply and for that reason hoped, but were never promised or guaranteed, for a source of supply. Some of these customers continue to do substantial business with Cudahy as well as other suppliers in order to insure continuing sources of supply. Under these facts the Court cannot see how any of the defendants breached any duty of loyalty when they had been approached and then only to join the venture without any solicitation of either finance or sales on their part. Plaintiff also makes some claim that the customers' unhappiness should have been revealed to Cudahy. These customers' desire to join in the venture was not because of any great unhappiness with Cudahy but because there was a fear of later loss of supply and a desire to vary as well as insure sources of supply.

There is a claim that Mr. Jackson, while still employed by Cudahy, attempted to secure the services of a key fellow employee, Mr. Phalen. Under the facts as here presented, Mr. Jackson did not actively induce Mr. Phalen to leave plaintiff's employ or to break any contract of employment. Both of these individuals had apparently reached the top for them at Cudahy and would advance no further and were aware of this fact after learning of the recommendation of a then recent consulting firm's report. Under those circumstances it would seem proper for these employees to join together and form a competing corporation. There is no evidence of malice or bad faith showing intent to leave Cudahy in a position where it could not function because key employees had left. In fact Mr. Phalen was summarily dismissed thereby not giving the plaintiff the opportunity to argue that the parties left without giving plaintiff an opportunity to train replacements. There is here the absence of a scheme to leave an employer without key personnel thereby hampering its ability to function. Rather there is a joining together to form a competing business because of internal changes effecting their present employment. Under these circumstances a plaintiff-employer fails in his cause of action for solicitation of key employees. See Restatement, Agency 2d § 393, Comment [e]; Metal Lubricants Co. v. Engineered Lubricants Co., 411 F.2d 426 [8th Cir. 1969].

Likewise any claim of interference with contract by Mr. West, who plaintiff claims actively induced Jackson and Phalen to leave plaintiff's employ, is without merit. Suffice it to say that Mr. West provided an opportunity for employment in the face of an apparent deteriorating situation at Cudahy showing no great future for Phalen and Jackson. Their reasons were therefore primarily their own rather than any inducements held out by West. Furthermore plaintiff had no binding contract

with Jackson and Phalen. They could leave Cudahy's employ any time they wanted to. Mr. West does not interfere with an employment contract by asking individuals to change when they can change at any time they desire.

Plaintiff has also made claim to a cause of action against the benefiting corporation, American Laboratories. No real basis has been shown for such an action. In any event since its agents have been found to have done no wrong a corporation which can only act through its agents cannot be found guilty of any wrongdoing.

■ The remaining claims of plaintiff evolve out of certain acts by Jackson which allegedly violated his duty of loyalty and good faith to his employer but which were not actually preparations for the new competing business. In early 1967 Mr. Jackson formed Jackson Sales Company. This was essentially a business in which Jackson acted as a broker between those interested in buying and selling raw glands. The sellers of these raw glands were presumably in the pharmaceutical division and the buyer was, during 1967, almost exclusively Armour and Company, a competitor of Cudahy in both the slaughter and pharmaceutical processing phases of this business. Plaintiff claims that Jackson was in direct competition with plaintiff in the sale of raw glands and also that he should have apprised plaintiff of the business opportunity available in the brokering of raw glands. Its final claim is that Jackson breached his duty of loyalty by providing a competitor with raw materials.

The first two claims are somewhat inconsistent. On the one hand plaintiff claims Jackson is in direct competition in the same business and on the other hand claims he should have been made aware of the business opportunity, thereby seemingly admitting it is not in that business. Regardless of which he chooses to rely upon, it is the decision of the Court that he cannot prevail.

Plaintiff is not in the raw gland brokerage business and never has been. Cudahy has occasionally [only once in 1967] bought or sold raw glands to or from outside sources. Occasionally a need arose at Cudahy for glands or a need arose to dispose of such because of excesses. This was accomplished by Mr. Jackson for which no commission was taken. If one had been taken that would be an obvious breach of his duties to Cudahy. It is therefore difficult to see how there can be any direct competition in the buying or selling of glands. Even Mr. Mason, the overall director of Cudahy's pharmaceutical division in 1967 admits that Mr. Jackson's entry into the gland brokerage business would not be an entry into direct competition with Cudahy.

As to the business opportunity, a company such as Cudahy who both provides the raw glands and then carries the process through by processing the glands for pharmaceutical purposes is in no position to act for its competitors as a broker. As Mr. West testified, it would be unusual if not impossible for Cudahy to act as a broker for its competitors. A broker by definition is a go-between and not one actively engaged and competing in buying, selling and processing glands. Under these circumstances, where there is no business opportunity, there is no duty to reveal.

■ Plaintiff's final claim that Jackson was under a duty to reveal his acting as a broker for a competitor requires careful analysis. The facts here indicate that Jackson acted as the broker for Armour and thereby provided Armour with a substantial amount of raw glands. Almost all of the raw glands brokered by Jackson were sold to Armour. By acting on behalf of a competitor in providing him with a substantial amount of its raw materials, possibly a necessity to carrying on his business, Jackson has at the least breached his duty of loyalty when he fails to disclose such to his employer. Such actions *may* be harmful to an employer and disclosure should therefore be made. C-E-I-R, Inc. v. Computer Dynamics Corp., 229 Md. 357, 183 A.2d 374 [1962]; Bancroft-Whitney v. Glen,

64 Cal.2d 327, 49 Cal.Rptr. 825, 411 P.2d 921 [1966]. Such actions may be harmful to the employer in the instance where the competitor would be unable to secure sufficient supplies but for Jackson and thereby possibly increasing the market for plaintiff as the competitor's market decreases. Under those circumstances disclosure should be made.

■ The problem that now confronts the Court after determining that a breach of employment duties has occurred is whether plaintiff has carried its burden as to damages. While the Court has not directed that this matter be briefed, it cannot conceive, out of all the evidence presented, any that would sustain plaintiff's burden of proof. If the breach was the carrying on of a competitive business during the course of employment then plaintiff would be entitled to the profits. But that is not the breach here in question. The breach is not in competing but in supplying raw materials to the competitor. Under that situation it would be necessary to present evidence that Jackson's failure to supply Armour would have effected Cudahy's market and then prove with reasonable certainty the amount of the market lost to Armour and the amount of that loss that Cudahy could reasonably be expected to gain. There is no evidence in this case that Armour could not secure another source nor the amount of the market that Cudahy could be expected to gain. Because plaintiff has failed to carry its burden of proving damages on this claim, the claim must be dismissed. Requesting briefs regarding damages would, under these circumstances, be of no assistance to the Court.

The Court would only further add that plaintiff in its arguments, has made claim that all of these actions on the part of all of the defendants are combined in a calculated plan to steal plaintiff's suppliers and customers. If there is no actionable wrong as to any of the parts of what plaintiff terms a calculated plan the sum of the whole can be no different.

The foregoing shall constitute the Court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure. Accordingly,

It is ordered that plaintiff's complaint should be and is hereby dismissed.