United States Court of Appeals
For the Eighth Circuit
No. 18-2900

Farmers Edge Inc.; Farmers Edge (US) Inc.; Farmers Edge (US) LLC

*Plaintiffs - Appellants*

v.

Farmobile, LLC; Jason G. Tatge; Heath Garrett Gerlock; Randall Thomas Nuss

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: February 11, 2020
Filed: August 17, 2020

_____

Before LOKEN, BENTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

This case arose after Jason Tatge, Heath Gerlock, and Randy Nuss (the individual defendants) left a company called Crop Ventures to co-found Farmobile (the corporate defendant). Farmers Edge (FEI) is Crop Ventures's successor-in-interest. Both FEI and Farmobile are agriculture technology companies that work on "precision agriculture" and the use of specialized data in farming. Believing the

individual defendants took proprietary information they developed at Crop Ventures, FEI sued. As relevant here, FEI alleges the individual defendants's behavior constituted a breach of explicit or implicit contracts with the company; that the defendants were obligated to assign to their employer the ownership rights of products they worked to develop; that the individual defendants breached their duty of loyalty to their employer; and that the individual defendants misappropriated trade secrets. The individual defendants filed counterclaims. On cross-motions for summary judgment, the district court[1] denied in full FEI's motion, and granted in part and denied in part Farmobile's motion. Only FEI appeals, and we affirm.

## I.

We review the district court's grant of summary judgment de novo. See Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). We view all facts in the light most favorable to the non-moving party. Id. We affirm if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Each of the individual defendants previously worked for Crop Ventures. Tatge was president of Crop Ventures from April to July 2013. He is a co-founder and CEO of Farmobile. Gerlock was an executive vice president of Crop Ventures, and also worked for Crop Ventures as an independent contractor. Gerlock is Farmobile's Director of Products. Nuss worked for Crop Ventures as an independent contractor from April 2012 to August 2012. Later, he was a full-time employee of Crop Ventures from October 2012 to July 2013. Nuss is also a co-founder of Farmobile and its Director of Engineering.

---

[1]The Honorable Joseph F. Battalion, United States District Judge for the District of Nebraska.

All three individual defendants left Crop Ventures in July 2013. By September 2013, they had founded Farmobile. They also filed two U.S. Provisional Patent Applications that month. In April 2015, they filed a Canadian Patent Application. In June 2016, FEI filed the operative First Amended Complaint in federal district court. As relevant here, the court denied FEI's motion for summary judgment, and in this appeal, FEI alleges a series of errors by the district court. We address each in turn.

## A. Contract Claims

We first address FEI's argument that the district court erred by concluding that none of the individual defendants breached an express or implied contract. FEI asserts that Nuss had an express contract with Crop Ventures. In the alternative, FEI contends that Nuss, Gerlock and Tatge had implied contracts with Crop Ventures. FEI alleges that each defendant breached his contract by failing to keep confidential Crop Ventures's allegedly proprietary information. The individual defendants counter that their relationships with Crop Ventures were not governed by any contract, express or implied.

## 1. Express Contract

Before Nuss joined Crop Ventures as an independent contractor in April 2012, he signed an agreement with the company (the April 2012 Agreement). The April 2012 Agreement is titled, "Confidentiality and Non-Competition Agreement," and the introductory clause states, "THE AGREEMENT is made as of Monday, April 30, 2012 between Crop Ventures, Inc. ('Company') and Randy Nuss ('Contractor.')." Nuss did not sign another agreement when he rejoined Crop Ventures as a full-time employee in October 2012. The April 2012 Agreement has clauses concerning

intellectual property, nonsolicitation, and nondisclosure of confidential information. Another clause states the agreement is not intended to operate as an employment contract.

FEI argues the April 2012 Agreement continued to bind Nuss after his time as an independent contractor ended in August 2012, and that Nuss breached it by using at Farmobile certain information that FEI says is their confidential, proprietary information. But FEI presented no evidence indicating the April 2012 Agreement continued to apply after Nuss left the company for the first time in August 2012. The April 2012 Agreement specifically refers to Nuss as a "contractor," and FEI concedes that Nuss had no role at the company after his term as an independent contractor and before he returned two months later as a full-time employee. There is nothing in the April 2012 Agreement stating it would come back into effect if Nuss rejoined the company. Nor is there evidence the parties intended for the April 2012 Agreement to govern Nuss's later employment. Without any textual support in the April 2012 Agreement, or evidence that the parties intended for the April 2012 Agreement to apply when Nuss returned to Crop Ventures as an employee in October 2012, FEI's argument fails. Because no contract bound the parties during Nuss's term of employment, Nuss was not in breach of an explicit contract.

### 2. Implied Contract

In the alternative, FEI argues that Gerlock and Tatge worked under an implied contract while at Crop Ventures, and that an implied contract also governed Nuss's employment at Crop Ventures after October 2012. FEI alleges all three individual defendants breached their implied contracts by failing to assign to FEI the ownership rights of the products they later sought to patent at Farmobile.

An implied contract is "an agreement 'implied in fact,' founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact,

from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding." Baltimore & O.R. Co. v. United States, 261 U.S. 592, 597 (1923). We apply state-law principles of contract formation to determine whether an implied contract existed. See Teets v. Chromalloy Gas Turbine Corp., 83 F.3d 403, 407 (Fed. Cir. 1996) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)). In Nebraska, an implied contract arises "where the intention of the parties is not expressed in writing but where the circumstances are such as to show a mutual intent to contract." Armstrong v. Clarkson Coll., 901 N.W.2d 1, 17 (Neb. 2017).

Generally, "an individual owns the patent rights to the subject matter of which he is an inventor, even though he conceived it or reduced it to practice in the course of his employment." Banks v. Unisys Corp., 228 F.3d 1357, 1359 (Fed. Cir. 2000). However, there are two exceptions that might assign ownership to the employer instead. First, "an employer owns an employee's invention if the employee is a party to an express contract to that effect." Id. However, as discussed, Nuss was not working under an express contract, and FEI does not appeal the district court's determination that Gerlock and Tatge also did not have express employment contracts.

The second exception is that when an employee is "hired to invent something or solve a particular problem, the property of the invention related to this effort may belong to the employer." Id. FEI argues each individual defendant was hired to invent the products they worked on, which created an implied contract to assign ownership of the products to the employer. In the hired-to-invent context, courts "must examine the employment relationship at the time of the inventive work to determine if the parties entered an implied-in-fact contract to assign patent rights." Teets, 83 F.3d at 407. The specific question is "whether the employee received an assignment on this occasion to invent." Id. at 409.

-5-

To prevail on its hired-to-invent theory based on an implied contract, FEI must show that the employees were given a certain amount of specific direction from their employer. See, e.g., Shook v. United States, 238 F.2d 952, 954 (6th Cir. 1956) ("When an employee is hired to devote his efforts to a particular problem, to conduct experiments for a specifically assigned purpose, and an invention results from the results of that work, it belongs to the employer."); Skycam LLC v. Bennett, 900 F. Supp. 2d 1264, 1276 (N.D. Okla. 2012) ("The primary factor courts consider in determining whether an employed to invent agreement exists is the specificity of the task assigned to the employee.").

FEI has not pointed to evidence in the record that Nuss, Gerlock, and Tatge "received an assignment on this occasion to invent." See Teets, 83 F.3d at 409. And FEI has not shown there was a meeting of the minds sufficient to form an implied contract. Teets, on which FEI relies, is inapposite. There, Teets was "specifically directed" to develop a particular product. Id. at 408. The court concluded that, "[h]aving directed Teets to that task, compensated him for his efforts, paid for the refinement of the process, and paid for the patent protection, [the employer] owns the patent rights in the [product]." Id. FEI has not shown that any of the individual defendants was similarly "specifically directed" during their product-development process, so no implied contracts were created under the hired-to-invent doctrine.

## B. Duty of Loyalty

FEI next argues the district court erred by concluding the individual defendants did not breach their duty of loyalty to their employer. Under Nebraska law, an employee has a duty of loyalty to their employer whether or not they have signed a covenant not to compete or a non-solicitation agreement. West Plains, LLC v. Retzlaff Grain Co., 870 F.3d 774, 786 (8th Cir. 2017). An employee owes this duty during the course of employment. Id. To be liable for a breach of this duty, the employee's "disloyal conduct must be so harmful as to substantially hinder the

-6-

employer in the continuation of his business." Id. (cleaned up). "Such conduct might include soliciting customers of the employer or forming one's own competing business while still working for the employer." Id.

But an employee has a right to "make preparations to enter into competition with" their former employer. Cudahy Co. v. Am. Labs., Inc., 313 F. Supp. 1339, 1346 (D. Neb. 1970). The law generally favors competition, and so requires "something more than preparation" on the part of the employee. Id. Courts consider whether the employee's actions "substantially hinder the employer in the continuation of his business." Id.

FEI relies on West Plains to support its argument that the individual defendants breached their duty of loyalty. In that case, we upheld a jury verdict for breach of the duty of loyalty where the employees offered insider information to a competitor of their employer, and then resigned en masse to ensure their customers would follow them from their employer to the competitor. West Plains, 870 F.3d at 786–87. Seven employees were in breach of an agreement with their employer governing confidentiality and consulting, and four were paid for their work with the competitor while still employed by West Plains. Id.

FEI does not point to any evidence showing the individual defendants breached their duty of loyalty to Crop Ventures. Although FEI relies on West Plains, Nuss, Gerlock, and Tatge's actions do not compare to the behavior of the defendants in that case. For example, FEI does not argue Tatge, Gerlock, or Nuss solicited Crop Ventures's competitors with insider information. Farmobile did not even exist when the three left Crop Ventures, so unlike the West Plains defendants, the individual defendants here could not have been paid by both companies at the same time. We agree with the district court that FEI failed to show the individual defendants breached their duty of loyalty to their employer.

-7-

## C. Trade Secrets

FEI argues that the district court erred by concluding the defendants did not misappropriate trade secrets within the meaning of the Nebraska Trade Secrets Act (NTSA) or the federal Defend Trade Secrets Act (DTSA). The individual defendants argue that FEI cannot maintain a claim for misappropriation because the alleged trade secret was not protectable within the meaning of these statutes.

The NTSA defines a "trade secret" as

> information, including, but not limited to, a drawing, formula, pattern, compilation, program, device, method, technique, code, or process that:
> (a) Derives independent economic value, actual or potential, from not being known to, and not being ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Neb. Rev. Stat. § 87-502(4). The DTSA uses a similar definition of trade secrets, identifying "all forms and types of financial, business, scientific, technical, economic, or engineering information . . . ." 18 U.S.C. § 1839(3). Similar to the NTSA, the DTSA provides that "such information only qualifies as a trade secret if the owner has 'taken reasonable measures to keep such information secret' and the information has economic value." CMI Roadbuilding, Inc. v. Iowa Parts, Inc., 920 F.3d 560, 564 (8th Cir. 2019) (quoting 18 U.S.C. § 1839(3)).

The district court concluded Crop Ventures did not take reasonable efforts to maintain the secrecy of the information it alleges was a trade secret. Crop Ventures shared the information with a third-party contractor without a confidentiality agreement and without other policies or practices for safeguarding secrets. The district court concluded this information was therefore not protected under the NTSA or DTSA.

On appeal, FEI has not challenged the finding that it shared the relevant information with a third-party who had no obligation to keep it confidential. As a result, we agree with the district court that Crop Ventures did not take reasonable steps to safeguard its trade secrets. Without such reasonable efforts or measures, there is no secret to protect, and FEI cannot maintain a claim under the NTSA or DTSA.

## D. Remaining Claims

FEI mentions in passing three other arguments, but none is persuasive. First, FEI argues the district court erred by concluding the individual defendants did not breach a duty of good faith and fair dealing. Next, FEI alleges the district court erred by denying FEI declaratory judgment on the question of ownership because such a declaration "follows straightforwardly from the substantive rights to relief under the basis of implied-in-fact contracts, also known as the hired-to-invent doctrine." Because FEI did not develop either argument in its opening brief, we decline to address them and consider them waived. See Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc., 908 F.3d 313, 324 (8th Cir. 2018) (noting "a litigant may not advert perfunctorily to an argument, hoping that we will do its work for it by developing the argument and putting flesh on its bones"); Ahlberg v. Chrysler Corp., 481 F.3d 630, 634 (8th Cir. 2007) (stating "points not meaningfully argued in an opening brief are waived"). Finally, because FEI has presented no argument on appeal in support of its claim to the Canadian patent, we can find no error in the district court's decision not to declare ownership of that patent.

## II.

For the foregoing reasons, the judgment of the district court is affirmed.

_____