NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0088n.06

Case No. 23-5200

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |
|---|---|
| IN RE: ISLAND INDUSTRIES, INC., | ) |
| Debtor. | ) |
| _____ | ) |
| SIGMA CORPORATION, | ) |
| Plaintiff - Appellant, | ) |
| v. | ) |
| ISLAND INDUSTRIES, INC., et al., | ) |
| Defendants - Appellees. | ) |

**FILED**
Feb 29, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF TENNESSEE

OPINION

Before: BATCHELDER, CLAY, and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff Sigma Corporation ("Sigma") sued Island Industries, Inc. ("Island") and its president, CEO, and principal owner, R. Glenn Sanders, for trade secret misappropriation under federal and state law, alleging that Island obtained Sigma's supplier list, among other information, from a former Sigma employee. Sigma alleges that after obtaining Sigma's trade secret information, Island used it to successfully pursue a qui tam action against Sigma and others under the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA") in California. Sigma accordingly sought recovery for the FCA judgment against it and other competitive harms suffered by virtue of Island's trade secret misappropriation. The district court dismissed Sigma's claims, finding that Sigma failed to adequately allege that it took reasonable steps to protect its trade secrets, and that Sigma's request for damages stemming from its FCA liability constituted impermissible indemnification under *Mortgages, Inc. v. U.S. Dist. Ct. for Dist.*

*of Nev.*, 934 F.2d 209 (9th Cir. 1991) (per curiam).  Sigma appealed the district court's ruling on these two grounds.  Because Sigma failed to allege that it took any measures—let alone reasonable measures—to protect its trade secrets, we affirm the district court's dismissal of Sigma's claims.  In doing so, we decline to address whether Sigma's requested damages would otherwise be deemed impermissible indemnification under the False Claims Act.

I.

Sigma Corporation is a New Jersey company that produces and imports welded pipe outlets and other products.  Island Industries, a Tennessee corporation, is both Sigma's direct competitor and one of its former suppliers.  In 2016, Island allegedly obtained trade secret materials, such as Sigma's confidential supplier list, from a former Sigma employee, Tom Paquette.  Sigma asserts that its suppliers' identities are not widely known, and that Sigma invested significant time and energy to find these reliable pipe fitting producers and to develop good relationships with them.

Island then used Sigma's supplier list to, among other things, file a qui tam action against Sigma and others in the Central District of California alleging violations of the FCA.  *See United States ex rel. Island Indus., Inc. v. Vandewater Int'l Inc.*, No. 2:17-CV-04393-RGK-KS, 2019 WL 6917927 (C.D. Cal. Sept. 3, 2019).  Island used Sigma's supplier list to demonstrate that Sigma knowingly failed to pay anti-dumping duties on its welded pipe outlets imported from the People's Republic of China.  During discovery, Island revealed the identities of Sigma's suppliers without labelling such documents confidential, allegedly in violation of a protective order in the case.  In 2021, a jury determined that Sigma violated the FCA, and the court entered judgment against Sigma in the amount of $24,256,638.09 in damages and $1,824,145.00 in civil penalties.  Sigma's appeal of this judgment is pending before the Ninth Circuit.

Sigma learned during discovery in the FCA action that Paquette, Sigma's former Supply Chain, Demand Forecasting, and Purchasing Manager, was the employee who supplied the trade secrets to Sanders and Island at Sanders's request. In addition to incurring costs associated with its FCA liability, Sigma alleges that Island's misappropriation of its trade secrets caused it competitive harms such as lost royalties and interference with Sigma's relationships with its suppliers and customers.

The current litigation arose after Island filed a Chapter 11 petition for bankruptcy in the Western District of Tennessee. Sigma filed a complaint before the bankruptcy court alleging trade secret misappropriation claims against Island and Sanders under federal, New Jersey, and Tennessee law. This adversary proceeding was then transferred to the district court, where Island and Sigma refiled relevant pleadings and motions from the bankruptcy proceeding. In February of 2023, the district court granted Island's motion to dismiss Sigma's trade secret claims. Sigma timely filed a notice of appeal.

## II.

This court "review[s] de novo the district court's dismissal of a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 395–96 (6th Cir. 2016) (citing *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015)). To avoid dismissal, a plaintiff must allege facts that, when taken as true, "state a claim to relief that is plausible on its face" and that rises "above the speculative level." *Id.* (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). When reviewing a motion to dismiss, the court must read the complaint "in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513,

518 (6th Cir. 2016).  Nonetheless, the court need not accept as true "conclusory legal allegations that do not include specific facts necessary to establish the cause of action."  *Bickerstaff*, 830 F.3d at 396 (quoting *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011)).  When entertaining a motion to dismiss, a court can consider documents attached to the complaint and may take judicial notice of documents from earlier proceedings "only for the fact of the documents' existence, and not for the truth of the matters asserted therein."  *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005).

III.

Sigma alleges violations of the Defend Trade Secrets Act ("DTSA") under 18 U.S.C. § 1836(b), the New Jersey Trade Secrets Act ("NJTSA") under N.J. Stat. § 56:15-1, *et seq*., and the Tennessee Uniform Trade Secrets Act ("TUTSA") under Tenn. Code Ann. § 47-25-1701, *et seq*.  The DTSA requires that a plaintiff demonstrate: (1) "the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret[;]" (2) that "is related to a product or service used in, or intended for use in, interstate or foreign commerce[;]" and (3) "the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, [] use[,] or disclosure of the secret."  *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (quoting 18 U.S.C. §§ 1836(b)(1), 1839(3), (5)).  Because the DTSA and NJTSA "are substantially similar as a whole" and contain nearly identical statutory definitions, such claims can be analyzed together.  *Id.* at 905 n.11.  Similarly, the elements of a DTSA claim are substantially the same as the elements of a TUTSA claim, so they can be analyzed together as well.  *See BNA Assocs., LLC v. Goldman Sachs Specialty Lending Grp., LP.*, 602 F. Supp. 3d 1059, 1065 (M.D. Tenn. 2022), *aff'd on other grounds*, 63 F.4th 1061 (6th Cir.

2023). The parties dispute whether Sigma adequately alleged that it took reasonable measures to protect its trade secrets, as required under the applicable statutes.

For information to qualify as a "trade secret," a DTSA plaintiff must show, among other things, that it has "taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(A). The Sixth Circuit has not articulated a single definition of what constitutes reasonable measures in a misappropriation claim. *United States v. Shanshan Du*, 570 F. App'x 490, 500 (6th Cir. 2014). But as part of this inquiry, courts have considered "physical security measures at facilities and confidentiality agreements," among other efforts "relating to sensitive information." *Id.* (citing *United States v. Howley*, 707 F.3d 575, 579 (6th Cir. 2013)); *First United Bank Ins. Sols., Inc. v. Inservices, LLC*, No. CIV-22-682-R, 2023 WL 1483138, at *3 (W.D. Okla. Feb. 2, 2023) (listing various circuit and district court cases that consider confidentiality agreements a reasonable measure).

Whether the particular precautions taken by a trade secret holder are reasonable "depends on a balancing of costs and benefits that will vary from case to case." *Niemi v. NHK Spring Co.*, 543 F.3d 294, 301 (6th Cir. 2008) (quoting *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 725 (7th Cir. 2003)) (reversing summary judgment grant where the district court overlooked the claimant's affidavit detailing numerous steps taken to protect the trade secret including maintaining physical control of the information, keeping physical copies in a locked location, instituting oral confidentiality agreements, and avoiding communication over electronic media). The reasonableness of a trade secret holder's alleged measures is usually a question for the trier of fact and thus typically "unfitting" for determination at the motion to dismiss stage. *Liion, LLC, v. Vertiv Grp. Corp.*, No. 18 C 6133, 2019 WL 1281977, at *2 (N.D. Ill. Mar. 20, 2019); *see also Niemi*, 543 F.3d at 303. But Island raises not the factual question of whether the

protective measures taken by Sigma were reasonable, but the legal question of whether Sigma alleged such reasonable measures in its complaint. Where, as in this case, the sufficiency of the complaint is challenged, it is this Court's prerogative to evaluate whether the complaint states the required elements of a cause of action. *See Bickerstaff*, 830 F.3d at 396.

Indeed, sister circuits in recent years have affirmed dismissal for failure to adequately plead reasonable measures of trade secret protection.[1] *See Pauwels v. Deloitte LLP*, 83 F.4th 171, 182–83 (2d Cir. 2023) (affirming dismissal where plaintiff alleged that he denied information access to some third parties but disclosed the information to others who were not obligated to keep the information secret); *Pie Dev. LLC v. Pie Ins. Holdings, Inc.*, No. 21-60593, 2023 WL 2707184, at *2–3 (5th Cir. Mar. 30, 2023) (per curiam) (affirming dismissal where the only alleged measure—a non-disclosure agreement—was not imposed by the trade secret owner and likely did not cover the trade secret information); *Turret Labs USA, Inc. v. CargoSprint LLC*, No. 21-952, 2022 WL 701161, at *3 (2d Cir. Mar. 9, 2022) (affirming dismissal where the trade secret owner conveyed the software to third parties without executing confidentiality agreements despite other allegations of protective measures); *Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447, 451 (2d Cir. 2021) (affirming district court's determination that the plaintiff failed to take reasonable measures to protect the trade secret where he "had little control" over the information and failed to execute nondisclosure or licensing agreements); *accord Farmers Edge Inc. v. Farmobile*, *LLC*, 970 F.3d 1027, 1033 (8th Cir. 2020) (affirming summary judgment grant where claimant disclosed the

---

[1] District courts have also dismissed claims that failed to allege reasonable measures of protection. *See, e.g., Raben Tire Co., LLC. v. McFarland*, No. 5:16-C-00141-TBR, 2017 WL 741569, at *2 (W.D. Ky. Feb. 24, 2017) (dismissing claim where the complaint was "entirely devoid of any allegations of how [the plaintiff] protected the information in question from dissemination."); *BNA Assocs., LLC*, 602 F. Supp. 3d at 1064–65; *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 424–27 (S.D.N.Y. 2021); *Investment Sci., LLC v. Oath Holdings Inc.*, 20-Civ-8159, 2021 WL 3541152, at *3–4 (S.D.N.Y. Aug. 11, 2021).

information to third parties without confidentiality agreements or other practices to safeguard the information). Typically, these cases have involved disclosure of trade secret information to third parties or the failure to control the spread of such information.

In challenging the district court's dismissal, Sigma makes much of its policy restricting employees' access to trade secret information on a need-to-know basis. Sigma points to case law deeming need-to-know policies and other internal information restrictions such as confidentiality agreements sufficient to demonstrate reasonable measures at the motion to dismiss stage.

Sigma is correct that the alleged dissemination of information on a need-to-know basis and the imposition of confidentiality agreements can constitute reasonable measures to protect trade secrets. *See, e.g., Certain Underwriters at Lloyd's London v. Jupiter Managing Gen. Agency, Inc.*, No. 3:20-cv-01037, 2022 WL 1462757, at *1–2 (M.D. Tenn. May 9, 2022) (finding efforts reasonable where plaintiff alleged that it designated information confidential, required disputes to take place in confidential arbitration, and limited access on a need-to-know basis); *Trans-Radial Sols., LLC v. Burlington Med., LLC*, No. 2:18-cv-656, 2019 WL 3557879, at *16 (E.D. Va. Aug. 5, 2019) (allegation of restricting access and disclosing information to defendants only on a need-to-know basis sufficient to survive motion to dismiss); *HTS Inc. v. Boley*, 954 F. Supp. 2d 927, 944 (D. Ariz. 2013) (allegations that secrets were password protected and accessible only to certain employees sufficient); *Harsco Corp. v. Piontek*, No. 3:07-0633, 2008 WL 686217, at *8 (M.D. Tenn. Mar. 5, 2008) (code of conduct requiring confidentiality for employees, imposition of confidentiality agreements in purchase orders, and use of physical obstructions to block the protected machinery from visitors in the building sufficient for preliminary injunction); *Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*, No. 3:16-CV-024-CHB, 2022 WL 4687025, at *23–24 (W.D. Ky. Sept. 30, 2022) (deeming evidence of need-to-know policy and password

protection, among other measures, sufficient to surpass summary judgment). But unlike the cases referred to above, Sigma failed to allege the existence of its need-to-know policy in its complaint. Accordingly, Sigma's allegations, taken together and read in the light most favorable to Sigma, do not demonstrate that it took any actions to protect its trade secrets, let alone reasonable actions. Parsing through Sigma's complaint illustrates the necessity of this conclusion.

First, Sigma alleges that "Mr. Paquette owed an implicit and explicit fiduciary duty to Sigma to maintain the confidentiality of the trade secrets and confidential business information he learned during the course of his employment with Sigma, and that he provided to Island." DE 37-1, Am. Compl., Page ID 791, ¶ 36. Sigma clarified that this allegation refers to the existence of a common law fiduciary duty imposed on employees in New Jersey that prohibits the disclosure of confidential information or trade secrets obtained during employment. Sigma asserts that this common law duty supports the reasonableness of Sigma's "belie[f] that Mr. Paquette would follow the law." CA6 R. 25, Appellant Reply Br., at 8. But the existence of a common law fiduciary duty does not obviate the statutory requirement that Sigma itself impose protective measures to maintain the secrecy of its valuable trade secrets. *See Zabit*, 540 F. Supp. 3d at 426–27. Further, Sigma does not allege that it ever made Paquette or other employees aware of this background legal duty. Indeed, even the case Sigma cites for the existence of this duty did not factor it in when considering the plaintiff's trade secret claim. *See P.C. of Yonkers, Inc. v. Celebrations! The Party & Seasonal Superstore, LLC*, No. 04-4554, 2007 WL 708978, at *10–13 (D.N.J. Mar. 5, 2007) (discussing the duty only when analyzing plaintiff's breach of duty of loyalty claim). So the common law duty does not help Sigma.

Second, Sigma alleges that "Mr. Paquette was not authorized to disclose Sigma's trade secrets and confidential business information." DE 37-1, Am. Compl., Page ID 791, ¶ 37. Sigma

argues that this gives rise to "[a] reasonable inference [] that the express terms of his employment barred Mr. Paquette from disclosing this information." CA6 R. 25, Appellant Reply Br., at 7. But this statement provides no indication, and thus does not give rise to the inference, that Sigma communicated this prohibition or lack of authorization to Paquette or other employees. While Sigma alleges that the supplier information was confidential, the fact that information is confidential reveals nothing about the measures taken to ensure it is not disclosed. *See Raben Tire Co.*, 2017 WL 741569, at *1 (dismissing trade secret claim where plaintiff "has not alleged any steps that it took to protect the information from disclosure" other than describing the information as "confidential" in its complaint).

Third, Sigma alleges that "Mr. Paquette acknowledged at his deposition that even while employed at Sigma, he did not have access to some of these trade secrets." DE 37-1, Am. Compl., Page ID 791, ¶ 37. Sigma characterizes this allegation as "functionally equivalent to an allegation that Mr. Paquette was provided information on a 'need to know' basis." CA6 R. 25, Appellant Reply Br., at 8. This statement provides some support to Sigma's argument that it took measures to protect its trade secrets, as it generates an inference that Sigma restricted access to some information. For the following reasons, however, this statement is insufficient to overcome dismissal.

At the outset, this statement provides no insight into whether Sigma restricted access to the alleged trade secrets and business information that Paquette *did* have access to. Sigma admits that Paquette had access to at least parts of the supplier list—the primary trade secret at issue. That Paquette did not have access to some other information does not generate the inference that the information to which he had access was restricted or protected by Sigma in any way. Further, with respect to the information to which Paquette did not have access, Sigma's complaint does not

indicate the basis for that restriction, whether it was enforced, and who was given access. *See Harsco Corp.*, 2008 WL 686217, at *8. Although Sigma need not provide detailed factual allegations for exactly how it intends to prove its case, this vague allegation of a partial restriction, not supported by allegations of other measures Sigma took to protect its trade secrets, is insufficient to plausibly state a claim for trade secret misappropriation.[2] The cases Sigma cites do not counsel otherwise, as all entail explicit allegations of restrictions on access combined with other measures or contain specific allegations as to the basis and scope of the information restrictions. *See Certain Underwriters at Lloyd's London*, 2022 WL 1462757, at *1–2; *Trans-Radial Sols.*, 2019 WL 3557879, at *16; *HTS Inc.*, 954 F. Supp. 2d at 944; *Harsco Corp.*, 2008 WL686217, at *8; *Phoenix Process Equip. Co.*, 2022 WL 4687025, at *23.

Sigma also takes issue with the district court's interpretation of Sigma's conduct during discovery in the FCA action. The district court found that not only did Sigma fail to allege that it took reasonable measures to protect its trade secrets, but that Sigma's failure to take advantage of the remedies available in response to Island's disclosure of the information in the FCA action further demonstrated that Sigma in fact failed to protect its trade secrets. The district court relied on *Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153 (E.D. Pa. 2017), for the proposition that

---

[2] Sigma also emphasizes that the trade secret information is not widely known and that Sigma benefits from the fact that this information is not known. These allegations demonstrate a different requirement of a trade secret claim—that the information have value added by virtue of it being a secret. *See* 18 U.S.C. § 1839(3)(b). But contrary to Sigma's position, this information does not demonstrate that Sigma took reasonable measures to protect the secrets from disclosure. Sigma attempts to contort these statements into an inference that, since the supplier list was important and not widely known, competitors had incentive to obtain the list and thus Sigma *must* have taken reasonable measures to protect it from public knowledge. Crediting this inferential chain would render the statutory requirement that a plaintiff allege that it took reasonable measures to protect that information—apart from alleging that the information derives value from its secrecy—a nullity.

the filing of trade secret information publicly, rather than under seal, indicates that a trade secret holder failed to take reasonable measures to protect its trade secrets. On this point, we agree with Sigma that *Nealey* is distinguishable. *Nealey* contemplated public disclosure of the trade secret by the trade secret owner itself. 262 F. Supp. 3d at 168. But here, Island, not Sigma, publicly disclosed the trade secret information. And once Island disclosed that information in the FCA case, Sigma alleged that it repeatedly requested that Island refile the information under seal. That Sigma could have done more to mitigate the harm after the trade secret was already published is not equivalent to Sigma's publishing the information itself.

But this minor misstep is not of concern, as the complaint itself, when read in the light most favorable to Sigma and drawing all reasonable inferences in Sigma's favor, does not demonstrate that Sigma took affirmative steps to protect the trade secrets at issue. The district court thus correctly determined that Sigma failed to adequately allege that it took reasonable measures to safeguard its trade secrets from disclosure. The district court likewise did not err in dismissing Sigma's claim with prejudice, as opposed to providing leave to amend, as Sigma wholly failed to request leave to amend in the district court. *See Sinay v. Lamson & Session Co.*, 948 F.2d 1037, 1042 (6th Cir. 1991) ("[A] district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought."); *Song v. City of Elyria*, 985 F.2d 840, 843 (6th Cir. 1993) (deeming plaintiffs' request for leave to amend "without merit because the plaintiffs failed to move the district court for leave to amend following the dismissal" of their claims). We therefore decline to provide Sigma with the opportunity to amend now.

## IV.

Although the question of whether a trade secret holder took reasonable measures to protect its trade secrets is fact-intensive, often rendering dismissal inappropriate, Sigma failed to allege

that it took any measures—let alone reasonable measures—to protect its trade secrets. The district court therefore correctly found that Sigma failed to make out a trade secret misappropriation claim under applicable law. Furthermore, Sigma's failure to request leave to amend in the district court rendered dismissal with prejudice appropriate. In light of these failures, we affirm the district court's order.